Filed 6/10/14  Elliott v. Hovrick CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| WILLLIAM ANDREW ELLIOTT,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MITCH HOVRICK et al.,<br><br>    Defendants and Respondents. | B248426<br><br>(Los Angeles County<br>Super. Ct. No. BC467001) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert L. Hess, Judge.  Affirmed.

Roger Jon Diamond for Plaintiff and Appellant.

Seki, Nishimura & Watase, Gilbert M. Nishimura and Andrew C. Pongracz for Defendants and Respondents.

_____

### INTRODUCTION

The plaintiff in this case filed a complaint against several law enforcement officers, alleging the officers had arrested him for a Vehicle Code violation without probable cause in violation of his civil rights. (42 U.S.C § 1983.) Finding no triable issue of material fact regarding whether there was probable cause for the arrest, the trial court granted the officers' motion for summary judgment. The plaintiff appeals from the judgment subsequently entered, arguing (1) even assuming he was the driver involved in the police pursuit preceding his arrest, he did not violate the Vehicle Code provision with which he was charged, and (2) the trial court should have exercised its discretion to deny the motion because he challenged the arresting officer's credibility as sole witness to a material fact and as a party testifying to his own state of mind. (Code Civ. Proc., § 437c, subd. (e).) Because it is undisputed that the arresting officer had probable cause for the arrest (among other reasons), we affirm.

### FACTUAL AND PROCEDURAL SUMMARY

In August 2011, William Elliott filed a complaint "for civil rights violation" against several "sheriff deputies of the County of Los Angeles," identified as Mitchell Hodrick (initially misspelled "Hovrick" in the complaint), Deputy Llaury, Deputy Witty, Deputy Knight and Deputy Goedecke.[1] (42 U.S.C. § 1983.) Elliott alleged the deputies

---

[1]     In its order granting summary judgment, the trial court noted that "Hodrick stated in both his deposition and his declaration that he was the one who arrested [Elliott]," and further observed that "[n]othing in Elliott's opposition suggests a basis for the liability of any other deputy beyond pure physical presence at the time of the arrest." In his opening brief, Elliott says he "concedes that Hodrick has acknowledged that he was the arresting officer and the evidence so indicates. Accordingly, so long as Hodrick remains in the case there is no reason to keep the other deputies in the case although they did participate in the arrest." According to the respondents' brief, Deputies Noel Witty, Miguel Llaury, Jason Goedecke and Shannon Knight were dismissed from the case by stipulation of the parties during the pendency of Elliott's appeal. In his reply brief, Elliott addresses his argument that summary judgment was improper to Hodrick alone. Keeping this record in mind, we include the deputy defendants in our references to Hodrick unless otherwise indicated.

2

arrested him for violating Vehicle Code section 2800.2, subdivision (a) (felony evasion), on April 13, 2010, despite the fact they lacked probable cause to do so, in violation of his Fourth and Fourteenth Amendment Rights. Elliott further alleged that the Los Angeles County District Attorney filed a criminal charge against him (People v. Elliott, LASC No. MA048841), but that charge was later dismissed without a trial.

Hodrick answered, the parties conducted discovery, and Hodrick then filed a motion for summary judgment, arguing (1) Elliott's arrest was lawful, constitutional and supported by probable cause; (2) Hodrick is entitled to qualified immunity; (3) Hodrick is entitled to sovereign immunity; and (4) Elliott's claim for punitive damages is without merit. In support of the motion, Hodrick submitted his own deposition testimony and declaration, declarations from another deputy involved in the pursuit and arrest (Shannon Knight), and deposition testimony of Elliott and his mother (Valerie Elliott) as evidence.[2]

According to Hodrick's testimony, on April 13, 2010, at about 2:00 a.m., Hodrick was parked facing north on the east "dirt curb" of 18th Street West, just north of Avenue K-8 in Lancaster, with the headlights of his patrol car turned off, when he heard and observed a vehicle he believed to be exceeding the 25-mile-per-hour speed limit, based on his training and because he "work[ed] traffic[,]" and the car continued to accelerate as it approached from the opposite direction (heading south).[3] Hodrick turned on his Maglite flashlight and held it up so the driver of the other car would have to travel through the beam of light as he drove past Hodrick. From a distance of about 10 to 15

---

[2]     In his separate statement, Hodrick also refers to the declarations of Deputies Jason Goedecke, Miguel Llaury and Noel Witty (and this evidence was apparently filed and served on Elliott given the fact he responded to the asserted undisputed material facts without indicating no such evidence was produced and referred to specific paragraph numbers within these declarations), but we do not find them in the record on appeal, and simply note the presence or absence of this additional evidence does not affect the resolution of this matter in any case.

[3]     Hodrick testified he had been to traffic school, had had 40 hours of speed estimation on vehicles either approaching or leaving and worked traffic enforcement and patrol.

3

feet, Hodrick got a "clear visual" of the vehicle as well as the driver who looked directly at Hodrick. The driver was a white male with "reddish blond spiky hair" and goatee, and he had a cigarette dangling from his mouth. Hodrick believed the car was an older white Ford Taurus.

After watching the driver "bl[o]w the stop sign" and turn right, Hodrick testified, he turned on his lights, put his car into drive, made a U-turn and began to simply follow directly behind the other vehicle, without his "rotators" on. Then, after observing the driver of the white Taurus as he failed to slow down for a red light and instead "blew through the red traffic signal"—almost causing a traffic collision at the intersection—and "weaving" between traffic lanes, Hodrick said he believed the driver to be driving recklessly and possibly "under the influence." At that point, he determined the driver to be an extreme danger to himself, other drivers and potential pedestrians so he turned on his emergency lights in an attempt to pull the driver over, but the driver did not yield. He then requested a "patch" into the dispatch radio channel to request assisting units and informed these units he was in pursuit of a white Taurus four-door sedan with a single white male occupant; he tried to direct the units to where he thought the driver was heading next. His main concern at the time, he testified, was the safety of the public and to maintain proper protocol to continue the pursuit.

According to Hodrick's testimony, with his patrol car's emergency lights on, he followed directly behind the vehicle until the intersection of 45th Street West and Avenue L-8, when another patrol unit (Deputies Goedecke and Knight), which had been "waiting" for the white car to come into view, was able to enter the pursuit closer to the vehicle, and from that point, Hodrick became the second unit in position behind Goedecke and Knight.[4] With Deputies Goedecke and Knight in first position, the pursuit

---

[4]     According to Knight's declaration, when he and his partner that night (Goedecke) heard Hodrick's broadcast about the white car, he (Knight) directed Goedecke to a location "ahead" of where he believed the suspect vehicle would travel and to "wait there." When he saw the white car as it "drove by very fast," he directed Goedecke to drive after it while he (Knight) kept sight of the vehicle through the entire chase except

continued through bumpy and muddy dirt roads, and Hodrick stated he saw the other vehicle's undercarriage hit the pavement at least once or twice.[5]

The deputies lost sight of the vehicle around the intersection of 45th Street West and Avenue L so the pursuit was terminated at that point (at about 2:20 a.m.); Hodrick then requested units in the area to search for a vehicle fitting the description he had broadcast and provided the vehicle's last known and anticipated direction of travel. He recalled the vehicle did not have hubcaps, and regrouped for a debriefing and recreated the pursuit route with his Sergeant, pursuant to protocol.[6] He was able to add more to his description of the driver and car, he testified, "as he was replaying back the set of circumstances that [he had] dealt with, [his] observations, things [we]re coming to [him]

---

for a few seconds during turns. Knight testified he "believe[d] that the suspect was driving faster than the permissible speed limit and [he] observed the suspect blow three stop signs in addition to driving recklessly."

[5] According to Hodrick's testimony, it was "clear that night," no rain, but the roads were "muddy, mud all over the place."

[6] At Hodrick's deposition, in conjunction with his review of "th[e] tape" in which he first described the driver as "a white male" but provided a "more detail[ed]" and "more informative description" of the driver later (adding that the white male suspect had "blond hair" before Elliott's arrest, for example, and progressed from calling the car a white car to a "Ford Taurus four-door," "the mid-version, the second generation of Taurus," as another example, Hodrick was asked why his recitation of greater detail was "not done earlier." Hodrick testified: "It's just processing of information. Since it's an ongoing pursuit, not only are we having to watch out for the safety of the other drivers, myself, speed and direction, [attempting to see a] license plate, coordinating the call, a license plate, which I can't get, a description of the driver, everything is going to be—it's just going to be the most pertinent information first, safety first. [¶] And as [the] pursuit goes on, as I'm becoming acclimated with the speed I'm traveling, the violence of the turns, my thought processes are actually speeding up. [¶] The important thing is at the initiation of the pursuit, the shock, the speed, the violence, the near crashes, the most important information goes out first, but as I'm becoming acclimated to my surrounding[s], I can pick up other things in more detail, and I can almost do the pursuit by automation."

a bit clearer as [his] adrenalin level start[ed] to drop, [and] the pursuit for the most part [wa]s over."

At about 3:45 a.m., Hodrick testified, he was notified over the police radio that, a mile from the pursuit's termination point, Deputies Witty and Llaury had located a vehicle they believed matched the description Hodrick had given; using Hodrick's last coordinates, Witty and Llaury had "grid searched the neighborhood [which meant they] drove up and down every street south of Avenue L between 45th and 50th Street West[,]" which was "[e]xactly where [Hodrick] had told them to look."[7] When Hodrick arrived at the specified address, he inspected the vehicle parked in the driveway, which was a "beat up" white Taurus without hubcaps. Hodrick said he "observed scrapes and g[o]uges on the undercarriage consistent with it hitting the pavement." In addition, he saw the same type of "granular mud" also present on the patrol units involved in the pursuit.[8] Either Deputy Knight or Goedecke noted the antenna was bent, just like the antenna on the vehicle in the pursuit. According to Knight's declaration, after inspecting the Taurus

---

[7] According to Deputy Knight's declaration, he was in the area when he heard Deputy Llaury report over the radio he had found a vehicle matching the description of the vehicle involved in the pursuit and drove to the location. He examined Elliott's Taurus parked at that location with his flashlight and "observed that it looked exactly like the car we had chased."

[8] At his deposition, Hodrick testified he saw "[m]ud on the inside of [Elliott's] car" as well as the car's undercarriage "as if it had been driven through a mud puddle" and the mud was "granular"--"[s]ame as the mud that was on the outside of ours, but [couldn't] explain why it [the outside of Elliott's car] wasn't muddy" and instead "was wet, [covered in what Hodrick described as] heavy, heavy, heavy dew" although he believed it was "[q]uite possibl[e]" Elliott had "washed the car off with a hose or something[]" between the termination of the pursuit and the deputies' arrival at Elliott's residence more than an hour and a half later. Earlier in his police radio broadcast, Hodrick said he had gone "through a bunch of dirt and mud with [the driver of the vehicle he was pursuing,]" and had stated: "He should be as muddy as we are." Hodrick further testified at his deposition that when he checked his own car, there was mud but "not as much as [he] thought" there would be, and the mud was "light" and had "kind of run off[.]"

6

with a flashlight, he "observed that it looked exactly like the car [he, Goedecke and Hodrick] had chased." According to Hodrick's deposition testimony, when he inspected Elliott's car, he "could tell it was the second generation Taurus with the organic headlights [he] was describing as [he] was chasing it."

When the deputies knocked on the door of the residence, Valerie Elliott (Elliott's mother) confirmed Elliott owned the 1999 Ford Taurus parked in the driveway and gave consent for the deputies to enter. Hodrick saw Elliott in the hallway, and Elliott gave his consent for the deputies to follow him to his bedroom because he wanted to put on a shirt. Elliott also made a comment about "how fast his car could go." Elliott had "spik[]y" hair and a goatee; he looked to Hodrick like the driver he had seen at the start of the pursuit. Hodrick then arrested Elliott because he (Hodrick) testified he believed Elliott to be the driver involved in the pursuit. According to Hodrick, Elliott was cooperative and no force (other than placing him in handcuffs and leading him to the patrol car) was required to make the arrest. Hodrick did not believe any of his own or the other deputies' actions were unlawful or violated Elliott's constitutional rights. At his own deposition, Elliott testified his arrest was "nothing personal against [him,]" but rather "just a [sic] general incompetence."

In support of his opposition to Hodrick's summary judgment motion, Elliott submitted his own declaration as well as a declaration from his attorney (Roger Diamond); each numbered paragraph of Elliott's declaration tracked the corresponding undisputed material fact presented in Hodrick's separate statement. The majority of paragraphs in Elliott's declaration, stated either "I do not know[]" or "True[]" in response to Hodrick's separate statement.

Otherwise, Elliott repeatedly stated that he was home sleeping during the "alleged chase . . . of some unidentified person." He acknowledged that it had rained the day before and the dirt roads were muddy but said there was no mud on his 1999 Ford Taurus, the car was parked in his parents' driveway that night, and he was not involved in any pursuit. He acknowledged that he had no hubcaps on his car; that his mother

7

consented to the deputies' entry; that he had a goatee; and that he was a smoker at the time (but not while sleeping). He said his hair was "partially standing up because of the pomade" he used to style his hair; he had "bed head, aka morning hair, that made [his] hair stick out from laying on a pillow"—"not . . . spiky hair." He said his car was cold (although at his deposition, he stated that he did not touch the car because he was handcuffed when he left his house) and "covered with dew" but said it "would have been warm if it had just been in a high speed chase[;]" he also stated that his car's back antenna was not bent (although at his deposition, he had stated that he did not know whether the antenna was bent and, in addition, a photograph his mother had taken which was attached as an exhibit to her deposition testimony demonstrated the antenna may have been either bent or positioned at an angle, and Hodrick had sold the car). Finally, Elliott stated: "I do not believe that the deputies, especially Hodrick, set out initially to frame an innocent person. They chased a vehicle and were embarrassed that they lost the vehicle."

According to Diamond's declaration, after the preliminary hearing in the criminal case entitled People v. Elliott, LASC No. MA048841, he became Elliott's attorney and answered ready for the criminal trial. Thereafter, he purported to summarize testimony in deposition transcripts and attachments (but did not provide copies of all of these documents).

Along with his reply brief, Hodrick filed objections to the Elliott and Diamond declarations and, pursuant to Evidence Code section 452, subdivision (d), and *Flores v. Arroyo* (1961) 56 Cal.2d 492, 497, requested judicial notice of the minute order in Elliott's criminal case, which indicated that at the preliminary hearing on April 29, 2010, on the complaint alleging Elliott's violation of Vehicle Code section 2800.2, subdivision (a), Elliott was "held to answer."

After hearing the parties' oral argument on November 30, 2012, the trial court took the matter under submission. Then on December 5, the trial court issued a five-page written order, granting Hodrick's motion for summary judgment on the ground that

8

"there are no triable issues of material fact with respect to the existence of probable cause for the arrest . . . ."

Initially, the trial court noted: "[Elliott] was arrested as the driver of a vehicle which had been involved in a car chase with Deputies Hodrick, Knight and Goedecke. The issues presented are whether there is a triable issue of material fact concerning: *first*, if the [deputy defendants] had probable cause to arrest [Elliott]; and *second*, if the [deputies] should have known they did not have probable cause to arrest [Elliott] based on the information they possessed at the time of the arrest."

Next, the trial court granted Hodrick's request for judicial notice of the minute order in Elliott's criminal case, noting that "[w]hile not conclusive, being held to answer is prima facie evidence of probable cause[,]" but also observed that "[t]he fact [Elliott] was 'held to answer' does not appear in [Hodrick's] separate statement."

Turning to the objections to Elliott's evidence, the trial court sustained Hodrick's specific objections to Elliott's declaration "(nos. 3-25)" and provided the legal reason for each ruling. The trial court agreed with Hodrick that most of Elliott's declaration consisted of "improper opinions or conclusions by [Elliott] concerning [Hodrick's] beliefs, knowledge and/or state of mind." In addition, several other paragraphs presented inadmissible hearsay, improper legal opinion or statements lacking foundation or relevance.

The trial court also sustained Hodrick's objection to the declaration of Elliott's attorney (Diamond) in its entirety as "'replete with inadmissible double or triple hearsay. [Elliott's counsel Diamond] characterizes dozens of portions of three separate deposition transcripts . . . instead of simply quoting and/or authenticating the transcript so the actual transcript could be used in evidence.'" Moreover, six of Hodrick's seven specific objections to Diamond's declaration were sustained as inadmissible hearsay.

Then, the trial court found Hodrick had demonstrated he was entitled to summary judgment on the ground probable cause existed for Elliott's arrest because Hodrick's "separate statement is complete and the contents are supported by the cited evidence."

9

The opposition, however, presented a number of "issues." "*First*, a substantial number of [Hodrick's] enumerated undisputed material facts are responded to in the following fashion: 'Disputed. See Elliott declaration paragraph [__]. See Diamond declaration page 3, lines 21-23, and page 6, lines 8-24.' This format was used to respond to [Hodrick's] undisputed facts[,] nos. 1-31, 33-34, 39-40, 43, 56-66, 68-85, 88-89, 94-98, and 101-105.[9] In a large number of the paragraph's in [Elliott's] declaration, he confined his statement to the words, 'I do not know.' As a result, although [Elliott] disputes the various undisputed facts, there is no admissible evidence set forth which directly addresses [Hodrick's] factual statements."

Similarly, the trial court observed: "The declaration of Mr. Diamond summarizes or recites at [sic] various exculpatory statements by [Elliott] and family members, and gives transcript page references. Despite the fact that those references did not make their way into [Elliott's] opposing separate statement, the Court has reviewed those references. While they set forth [Elliott's] version of what occurred on the night in question, they do not directly address the facts in [Hodrick's] separate statement. Mr. Diamond also refers to other evidence, such as photographs allegedly taken by [Elliott's] mother, and the contents of transcripts of the radio transmissions or the dispatch transmission, but those are not part of the evidence [Elliott] submitted to the Court."

The trial court next described the principles guiding the court's legal analysis of the probable cause issue on summary judgment, as discussed in *Johnson v. Lewis* (2004) 120 Cal.App.4th 443, 456. "Applying these principles, the events leading up to locating [Elliott's] car are undisputed. [The deputy defendants] were given permission to enter [Elliott's] home by his mother, and [Elliott] was not arrested until Deputy Hodrick identified him as the person he had seen driving the vehicle. These circumstances lead to the conclusion that the undisputed facts demonstrate the existence of probable cause as a matter of law.[]" Concluding the motion for summary judgment was properly granted on

---

9      "The balance of [Hodrick's] undisputed facts were specifically stated to be 'undisputed.'"

10

the ground that there were no triable issues of material fact with respect to the existence of probable cause for the arrest, the trial court found it unnecessary to address Hodrick's additional arguments.

Elliott appeals from the judgment subsequently entered.[10]

### *DISCUSSION*

*Motions for Summary Judgment and the Standard of Review*.

"The purpose of summary judgment is to determine whether the parties possess evidence that requires the weighing procedures of a trial. (*Lyons v. Security Pacific Nat. Bank* (1995) 40 Cal.App.4th 1001, 1013 [48 Cal. Rptr. 2d 174].)  Accordingly, a motion for summary judgment should be denied when the parties' submissions demonstrate the existence of a triable issue of material fact.  (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal. App. 3d 1061, 1065 [225 Cal. Rptr. 203].)

"On appeal from the entry of a summary judgment, we apply the same standard that was applicable in the trial court, i.e., we independently review the record to determine whether there are triable issues of material fact.  (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767 [107 Cal. Rptr. 2d 617, 23 P.3d 1143].)  In doing so, we view the parties' evidentiary submissions in a light most favorable to the appellant as the losing party.  (*Id*. at p. 768.)  Summary judgment will be upheld when the evidence, viewed in such a light, demonstrates that there is no material issue of fact which requires the process of a trial so that the respondent is entitled to judgment as a matter of law. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [100 Cal. Rptr. 2d 352, 8 P.3d 1089].)"  (*Johnson v. Lewis* (2004) 120 Cal.App.4th 443, 451.)

"To obtain summary judgment, defendant must show plaintiffs cannot establish an element of their causes of action, or show a complete defense thereto.  (*Aguilar v.*

---

[10]     Although the judgment was filed on January 2, 2013, Elliott notes (and Hodrick does not dispute) there is no proof of service of the judgment in the record so Elliott's notice of appeal dated April 30, 2013 was timely filed (within 180 days of the filing date of the judgment, rather than 60 days after service).  (Cal. Rules of Court, rule 8.104(a)(1)(C).)

11

*Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal. Rptr. 2d 841, 24 P.3d 493].)
[The defendant] bears the burden to 'make a prima facie showing of the nonexistence of any triable issue of material fact.' (*Ibid*.) If defendant makes this showing, plaintiffs must show some triable issue of material fact does exist. (*Ibid*.) Plaintiffs 'may not rely upon the mere allegations or denials of [their] pleadings,' but must 'set forth the specific facts showing that a triable issue of material fact exists.' (Code Civ. Proc., § 437c, subd. (p)(2).) 'The party opposing the summary judgment must make an independent showing by a proper declaration or by reference to a deposition or another discovery product that there is sufficient proof of the matters alleged to raise a triable question of fact if the moving party's evidence, standing alone, is sufficient to entitle the party to judgment. [Citations.] To avoid summary judgment, *admissible evidence* presented to the trial court, *not merely claims or theories*, must reveal a triable, material factual issue. [Citation.] Moreover, the opposition to summary judgment will be deemed *insufficient when it is essentially conclusionary, argumentative or based on conjecture and speculation*.' (*Wiz Technology, Inc. v. Coopers & Lybrand* (2003) 106 Cal.App.4th 1, 10–11 [130 Cal. Rptr. 2d 263] (*Wiz Technology*).)" (*Trujillo v. First American Registry, Inc.* (2007) 157 Cal.App.4th 628, 635, italics added.)

"On appeal, 'we must independently examine the record to determine whether triable issues of material fact exist.' (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767 [107 Cal. Rptr. 2d 617, 23 P.3d 1143].)" (*Trujillo v. First American Registry, Inc., supra,* 157 Cal.App.4th at p. 635.)

"Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion. (*State Dept. of Health Services v. Superior Court* (2003) 31 Cal. 4th 1026, 1034-35 [6 Cal. Rptr. 3d 441, 79 P.3d 556].) '"We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers *except that to which objections were made and sustained*."' (*Id*. at p. 1035.) We liberally construe the evidence in support of the party opposing summary judgment and

12

resolve doubts concerning the evidence in favor of that party. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal. 4th 1138, 1142 [12 Cal. Rptr. 3d 615, 88 P.3d 517].)" (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037, italics added.)

"'A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail. [Citation.]' [Citation.] Generally, 'the party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact.' (*Aguilar v. Atlantic Richfield Co.,* [*supra*], 25 Cal.4th [at p.] 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].) In moving for summary judgment, 'all that the defendant need do is to show that the plaintiff cannot establish at least one element of the cause of action—for example, that the plaintiff cannot prove element X.' (*Id.* at p. 853.)

"""Review of a summary judgment motion by an appellate court involves application of the same three-step process required of the trial court. [Citation.]"' (*Bostrom v. County of San Bernardino* (1995) 35 Cal.App.4th 1654, 1662 [42 Cal.Rptr.2d 669].) The three steps are (1) identifying the issues framed by the complaint, (2) determining whether the moving party has made an adequate showing that negates the opponent's claim, and (3) determining whether the opposing party has raised a triable issue of fact. (*Ibid.*)

"'Although we independently review the grant of summary judgment [citation], our inquiry is subject to two constraints. First, we assess the propriety of summary judgment in light of the contentions raised in [appellant's] opening brief. [Citation.] Second, to determine whether there is a triable issue, we review the evidence submitted in connection with summary judgment, *with the exception of evidence to which objections have been appropriately sustained.* [Citations.]' (*Food Safety Net Services v. Eco Safe*

*Systems USA, Inc*. (2012) 209 Cal.App.4th 1118, 1124 [147 Cal.Rptr.3d 634].)"
(*Sanchez v. Hitachi Koki, Co.* (2013) 217 Cal.App.4th 948, 953-954, italics added.)

Here, Hodrick raised numerous evidentiary objections to Elliott's declaration, and the trial court sustained almost every one; the trial court sustained Hodrick's objections to Diamond's declaration in its entirety. Because Elliott does not attack the rulings on appeal, he has forfeited any contentions of error regarding them. (*Food Safety Net Services v. Eco Safe Systems USA, Inc.*, *supra*, 209 Cal.App.4th at p. 1124, citing *Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1181.)
*The Fourth Amendment and Probable Cause*.

""""The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' In conformity with the rule at common law, a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed.'" (*People v. Thompson* (2006) 38 Cal.4th 811, 817 [43 Cal. Rptr. 3d 750, 135 P.3d 3].) Penal Code section 836, subdivision (a) provides, 'A peace officer may arrest a person in obedience to a warrant, or, . . . without a warrant, may arrest a person whenever *any* of the following circumstances occur: [¶] (1) The officer has probable cause to believe that the person to be arrested has committed a public offense in the officer's presence. [¶] (2) The person arrested has committed a felony, although not in the officer's presence. [¶] (3) The officer has probable cause to believe that the person to be arrested has committed a felony, whether or not a felony, in fact, has been committed.'[11] (Italics added.)

---

[11] As Vehicle Code section 2800.2 provides for imprisonment in state prison, violation of that section qualifies as a felony (Pen. Code, § 17) even though the offense is a "wobbler"—i.e., it can also be punished as a misdemeanor. (See *Levin v. United Air Lines, Inc.* (2008) 158 Cal.App.4th 1002, 1017, fn. 19, citing *Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 901–902, fn. 7 ["A wobbler is deemed a felony unless charged as a misdemeanor by the People or reduced to a misdemeanor by the sentencing court . . . ."].)

14

"'Reasonable cause to arrest exists when the facts known to the arresting officer would lead a reasonable person to have a strong suspicion of the arrestee's guilt. (*People v. Mower* (2002) 28 Cal.4th 457, 473 [122 Cal.Rptr.2d 326, 49 P.3d 1067].)  This is an objective standard. (*People v. Adair* (2003) 29 Cal.4th 895, 904–905 [129 Cal.Rptr.2d 799, 62 P.3d 45].)'  (*O'Toole v. Superior Court* (2006) 140 Cal.App.4th 488, 511 [44 Cal. Rptr. 3d 531].)  'It is the right to arrest that is being tested. . . .  The question with which we are concerned is not "why did the officer want to arrest this particular defendant?" but rather "was there reasonable cause to arrest this particular defendant?"  The arresting officer's secret intentions, hopes, or purposes have nothing to do with the legality of the arrest.  The legality [of the arrest] which is based upon reasonable cause is tested by objective standards . . . .'  (*People v. McClure* (1974) 39 Cal. App. 3d 64, 68 [113 Cal. Rptr. 815]; see *Gillan v. City of San Marin* [(2007) 147 Cal.App.4th [1033,] 1045 ['Probable cause is measured by an objective standard based on the information known to the arresting officer, rather than a subjective standard that would take into account the arresting officer's actual motivations or beliefs . . . .'].)  '"'[S]ufficient probability [that a crime has been committed], not certainty, is the touchstone of reasonableness under the Fourth Amendment.'"'  (*People v. Thompson, supra*, 38 Cal.4th at p. 820.)"  (*Levin v. United Air Lines, Inc.* (2008) 158 Cal.App.4th 1002, 1017, 1018.)

"If the facts that gave rise to the arrest are undisputed, the issue of probable cause is a question of law for the trial court."  (*Levin v. United Air Lines, Inc., supra,* 158 Cal.App.4th at p. 1018, citations omitted.)

*Elliott's Claims*.

"In assessing the propriety of summary judgment, we look first to [the] allegations in the [complaint], which frame the issues pertinent to a motion for summary judgment. (*Bostrom v. County of San Bernardino, supra*, 35 Cal.App.4th at p. 1662 ['"'[I]t is [the complaint's] allegations to which the motion must respond by establishing … there is no factual basis for relief on any theory reasonably contemplated by the opponent's

15

pleading. [Citations.]'"".)" (*Food Safety Net Services v. Eco Safe Systems USA, Inc., supra,* 209 Cal.App.4th at p. 1124.)

In Elliott's complaint, he alleges that Hodrick arrested him for violating Vehicle Code section 2800.2, subdivision (a), without probable cause to do so.

In his appeal, Elliott first argues *no one* violated Vehicle Code section 2800.2.[12] "Here, clearly . . . Elliott was innocent of the charge[,]" and the "phantom driver whom Hodrick was apparently pursuing did not commit a felony either." The "phantom driver" Hodrick pursued did not violate Vehicle Code section 2800.2, and had that person been apprehended by Hodrick, he could not have been arrested with probable cause, so, according to Elliott, there was no reason for Hodrick to pursue that person either. He says although "[he] should not have to assume the burden of proving that some stranger was also not subject to a proper arrest[, e]ven assuming arguendo the stranger was Elliott[,] he should not have been arrested." Without citation to either the record or

---

[12]     Vehicle Code section 2800.2 (disregard for safety of persons or property), subdivision (a), provides (in pertinent part) as follows: "If a person flees or attempts to elude a pursuing peace officer in violation of Section 2800.1 and the pursued vehicle is driven in a willful or wanton disregard for the safety of persons or property, the person driving the vehicle, upon conviction, shall be punished by imprisonment in the state prison, or by confinement in the county jail for not less than six months nor more than one year. . . ."

Subdivision (a) of Vehicle Code section 2800.1 (flight from peace officer) states as follows: "Any person who, while operating a motor vehicle and with the intent to evade, willfully flees or otherwise attempts to elude a pursuing peace officer's motor vehicle, is guilty of a misdemeanor punishable by imprisonment in a county jail for not more than one year if all of the following conditions exist: [¶] (1) The peace officer's motor vehicle is exhibiting at least one lighted red lamp visible from the front and the person either sees or reasonably should have seen the lamp. [¶] (2) The peace officer's motor vehicle is sounding a siren as may be reasonably necessary. [¶] (3) The peace officer's motor vehicle is distinctively marked. [¶] (4) The peace officer's motor vehicle is operated by a peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2 of the Penal Code, and that peace officer is wearing a distinctive uniform."

16

authority (other than Vehicle Code section 2800.2, subdivision (a)), Elliott says "the record indicates there was no traffic and the phantom driver drove by Hodrick in a harmless way. Hodrick was not even certain whether the driver was speeding."

Elliott ignores both the record and the law.

First, as long as Hodrick had probable cause to arrest Elliott, it makes no difference whether he arrested Elliott for the wrong offense. The court in *Johnson v. Lewis, supra,* 120 Cal.App.4th 443, addressed the same issue. (*Id.* at p. 452.) "In claiming that there are triable issues of material fact with respect to whether Lewis had probable cause to arrest her, plaintiff focuses on the offense for which she was ultimately cited. (Veh. Code, § 23103.) *However, the question of probable cause to arrest is not so circumscribed.*" (*Johnson v. Lewis, supra,* 120 Cal.App.4th at p. 452, italics added.)

"Probable cause means that the arresting officer was aware of facts that would lead a person of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that an individual is guilty of a crime. (*People v. Harris* (1975) 15 Cal.3d 384, 389 [124 Cal. Rptr. 536, 540 P.2d 632].) If an officer has probable cause to believe a person is guilty of a crime, *probable cause is not vitiated and an arrest remains valid even if the officer purports to arrest the person for the wrong crime*. (*People v. Rodriguez* (1997) 53 Cal.App.4th 1250, 1262–1265 [62 Cal. Rptr. 2d 345]; *People v. Goldberg* (1984) 161 Cal. App. 3d 170, 179 [207 Cal. Rptr. 431]; *People v. Lewis* (1980) 109 Cal. App. 3d 599, 609 [167 Cal. Rptr. 326]; *In re Donald L.* (1978) 81 Cal. App. 3d 770, 775 [146 Cal. Rptr. 720].)" (*Johnson v. Lewis, supra,* 120 Cal.App.4th at p. 452, italics added.)

According to Knight's declaration, the driver of the white car involved in the pursuit drove by Knight and Goedecke "very fast[;]" Knight "believe[d] the suspect was driving faster than the permissible speed limit." Moreover, "[Knight] observed the suspect blow three stop signs in addition to driving recklessly." Similarly, according to Hodrick's testimony, he believed the suspect to be driving in excess of the speed limit, he observed the suspect "weaving" between traffic lanes, and he saw the pursuit suspect

17

"bl[o]w through the red traffic signal" at a specified intersection, "almost causing a traffic collision." "At that point," Deputy Hodrick testified, he "believed the driver to be driving recklessly and possibly under the influence." Having "determined that he was an extreme danger to himself, other drivers and to potential pedestrians," Hodrick turned on his emergency lights in an attempt to pull the driver over, but the driver did not yield— even though Hodrick testified he was following directly behind the other driver and an additional patrol unit (Deputies Knight and Goedecke) joined the pursuit.

In other words, regardless of whether the deputies satisfied every element necessary for finding a violation of Vehicle Code section 2800.2, the record establishes facts supporting a reasonable suspicion of criminal activity nevertheless as there was evidence the driver committed one or more public offenses in the officers' presence. "[T]he validity of an arrest is measured by whether the facts known to the officer support a reasonable suspicion of criminal activity, not whether the facts are sufficient to convict." (*Johnson v. Lewis, supra,* 120 Cal.App.4th at p. 454; *id.* at p. 452, italics added ["If an officer has probable cause to believe a person is guilty of a crime, probable cause is not vitiated and an arrest remains valid *even if the officer purports to arrest the person for the wrong crime*"]; Pen. Code, § 836, subd. (a).) Even if Hodrick erred in citing Elliott for violation of Vehicle Code section 2800.2, the arrest was still valid in light of the driver's apparent commission of multiple offenses, including reckless driving (Veh. Code, § 23103).[13] (*Id.* at p. 454)

Without supporting legal authority or citations to the record, Elliott asserts "Hodrick knew that Elliott was not the person who drove past him. Whether Hodrick sincerely and subjectively believed that he had the right person was a fact in dispute that should have been resolved by a judge or jury."

Once again, Elliott ignores both the record and the law.

---

[13] According to the booking and property record in connection with Elliott's arrest, he was also originally charged with reckless driving (Veh. Code, § 23103, subd. (a)), as well as felony evasion (Veh. Code, § 2800.2, subd. (a)).

18

First, Elliott identified as *undisputed* the following fact set forth in Hodrick's separate statement: "Based on Deputy Hodrick's identification of [Elliott,] Hodrick believed [Elliott] was the driver of the vehicle involved in the pursuit."

Furthermore, as addressed in the preceding section, Hodrick had probable cause to arrest the driver of the white car involved in the pursuit, and according to the evidentiary record (over and above the foregoing concession), the car involved in the pursuit was the same car parked in the driveway of Elliott's residence and Elliott was the car's driver. Hodrick testified the driver looked directly at him when he directed his flashlight at the driver from a distance of 10 to 15 feet so he got a "clear visual" of the driver; then when Hodrick saw Elliott at his residence, Hodrick testified, he recognized him (Elliott) as the car's driver. In fact, at his own deposition, Elliott testified that, as soon as Hodrick saw Elliott, Hodrick pointed at him and said, "That's the guy." "Probable cause is measured by an objective rather than subjective standard. (*People v. Rodriguez, supra*, 53 Cal.App.4th at p. 1266.) Where, as here, an officer has probable cause to make an arrest, we will not inquire into his subjective motivations. (*Ibid*.)" (*Johnson v. Lewis, supra,* 120 Cal.App.4th at p. 454.)

In any event, we cannot agree with Elliott that Hodrick's knowledge or motivation is questionable. In his own deposition testimony, Elliott testified that as soon as he walked around the corner and saw Deputy Hodrick, Hodrick immediately pointed at him and said, "That's the guy." Elliott acknowledged that, at the time of his arrest, Deputy Hodrick "was convinced" Elliott knew why he was being arrested and commented on how "fast" Elliott's car was. Furthermore, Elliott specifically denied that he knew any of the other deputies involved in his arrest (and there is no indication in the record that he had any prior contact with Hodrick either). To the contrary, Elliott testified, "I don't think it was anything personal . . . ." According to the record, just as the court observed in *Johnson v. Lewis, supra,* 120 Cal.App.4th 443, all of Hodrick's actions "were entirely consistent with a law enforcement motivation. He did not do or say anything which would indicate any motivation other than law enforcement. . . . In short, there is nothing

19

in the record that would suggest Lewis [or, in this case, Hodrick] had any motivation other than enforcement of the traffic laws." (*Id.* at pp. 453-454.)

Just as the court determined with respect to the officer and facts presented in *Johnson v. Lewis, supra,* 120 Cal.App.4th 443, "[Hodrick] had the statutory authority to make an arrest on probable cause that a traffic offense posing a danger to persons or property was committed in his presence." (*Id.* at p. 455.) "The record establishes the probable cause which was necessary for an arrest by [Hodrick]. Hence, we reject [Elliott's] contention that there are triable issues of material fact with respect to the validity of the arrest." (*Id.* at pp. 455-456.) Indeed, Ellliott's own testimony only bolsters Hodrick's evidence on the issue of probable cause for the arrest.

"Based on the [applicable] authorities, defendants were *not required* to show that the facts known to the officers were sufficient to prove that plaintiff actually committed a crime. Rather, it was sufficient to show that the officers were aware of facts that would cause *a reasonable person* to suspect a crime had been committed. Under this objective standard, the officers' actual or subjective belief that plaintiff did or did not commit a crime is irrelevant to the probable cause analysis." (*Levin v. United Air Lines, Inc., supra,* 158 Cal.App.4th at p. 1019, original italics.) Because the evidence in this case demonstrates Deputy Hodrick met this threshold as a matter of law (and Elliott asserted nothing more than speculation to the contrary), Hodrick was entitled to summary judgment in his favor on the issue of probable cause for Elliott's arrest. (*Id.*) "When, as here, the facts known to an officer are sufficient to constitute probable cause to arrest, the possibility of an innocent explanation does not vitiate probable cause and does not render an arrest unlawful. (*Kodani v. Snyder* (1999) 75 Cal.App.4th 471, 476–477 [89 Cal. Rptr. 2d 362].)" (*Johnson v. Lewis, supra,* 120 Cal.App.4th at pp. 476-477.)

Next, Elliott argues "Hodrick *knew* Elliott was *not* the person he was chasing; his credibility was in dispute and therefore the [trial] court should have exercised discretion under Code of Civil Procedure [section] 437c[, subdivision] (e) and denied the summary judgment motion." (Italics added.)

20

As we have already noted, Elliott expressly conceded as "undisputed" fact the following statement: "Based on Deputy Hodrick's identification of [Elliott,] Hodrick believed that [Elliott] was the driver of the vehicle involved in the pursuit." This admission flatly contradicts Elliott's argument on appeal that Hodrick actually "*knew* Elliott was *not* the person he was chasing." (Italics added.) Additionally, Elliott's own deposition testimony acknowledges Hodrick said, "That's the guy" as soon as he saw Elliott and "was convinced" Elliott was the driver involved in the pursuit nearly two hours earlier. Elliott's claims he was asleep (or that his car was very wet or not that muddy) do not create a triable issue of material fact as to whether Hodrick met the objective standard required for a showing of probable cause for an arrest. (*Johnson v. Lewis, supra,* 120 Cal.App.4th at p. 452, citation omitted ["Probable cause means that the arresting officer was aware of facts that would lead a person of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that an individual is guilty of a crime"].)

Elliott also asserts, "Hodrick did not have any basis for believing that Elliott was the person he was pursuing." Citing Code of Civil Procedure section 437c, subdivision (e), Elliott says the trial court should have exercised its discretion to deny Hodrick's summary judgment motion because (1) Hodrick was the sole witness of a particular fact (that Elliott was the one he was pursuing) and (2) a material fact was Hodrick's state of mind.[14] Elliott's reliance on this statutory provision is unavailing.

---

[14] "If a party is otherwise entitled to a summary judgment pursuant to this section, summary judgment may not be denied on grounds of credibility or for want of cross-examination of witnesses furnishing affidavits or declarations in support of the summary judgment, except that summary judgment may be denied in the discretion of the court, where the only proof of a material fact offered in support of the summary judgment is an affidavit or declaration made by an individual who was the sole witness to that fact; or where a material fact is an individual's state of mind, or lack thereof, and that fact is sought to be established solely by the individual's affirmation thereof." (Code Civ. Proc., § 437c, subd. (e).)

Pursuant to the statutory framework governing such motions, "The motion for summary judgment *shall be granted* if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence, *except* summary judgment may not be granted by the court based on inferences reasonably deducible from the evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact."[15]  (Code Civ. Proc., § 437c, subd. (c), italics added.)

Moreover, "If a party is *otherwise entitled* to a summary judgment pursuant to this section, summary judgment *may not be denied on grounds of credibility* or for want of cross-examination of witnesses furnishing affidavits or declarations in support of the summary judgment, *except* that summary judgment *may* be denied in the *discretion* of the court, where the only proof of a material fact offered in support of the summary judgment is an affidavit or declaration made by an individual who was the sole witness to that fact; or where a material fact is an individual's state of mind, or lack thereof, and that fact is sought to be established solely by the individual's affirmation thereof."  (Code Civ. Proc., § 437c, subd. (e), italics added.)

In opposing Hodrick's summary judgment motion, Elliott maintained he was asleep in bed at the time of the police pursuit.  However, Elliott did not offer any admissible evidence to contradict the evidence Hodrick submitted to establish probable cause for Elliott's arrest.  Hodrick said the white car first drew his notice when it

---

[15]      In addition, "Supporting *and opposing* affidavits or declarations shall be made by any person on personal knowledge, *shall set forth admissible evidence*, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavits or declarations.  Any objections based on the failure to comply with the requirements of this subdivision shall be made at the hearing or shall be deemed waived."  (Code Civ. Proc., § 437c, subd. (d), italics added.)

22

approached him at what appeared to Hodrick to be excessive speed so he looked up and directed his flashlight at the driver. As the car passed him, Hodrick said he got a "clear visual" of the driver as well as his car. Therefore, he was able to later identify Elliott as the car's driver when he (Hodrick) saw Elliott (again, according to Hodrick) before Elliott was arrested. Consequently, Elliott left unrebutted Hodrick's showing of probable cause, entitling Hodrick to summary judgment as a result.

Instead, like the plaintiffs in *Trujillo v. First American Registry, Inc., supra,* 157 Cal.App.4th 628, Elliott challenged Hodrick's testimony "only by labeling it unbelievable and self-serving." (*Id.* at p. 636 ["They doubt the [defendant property managers] even remember [prospective tenant plaintiffs], let alone can identify why their applications were rejected"].) As the *Trujillo* court simply stated: "No matter. Summary adjudication 'may not be denied on grounds of credibility.' (Code Civ. Proc., § 437c, subd. (e).) 'If the moving party's evidence is not controverted, the court must ordinarily accept it as true for purposes of the [summary adjudication] motion. In other words, the judge generally lacks discretion to deny the motion and send the case to trial simply to allow the opposing party to cross-examine the affiants or otherwise test their credibility.' (6 Witkin, Cal. Procedure (4th ed. 1997) Proceedings Without Trial, § 220, p. 631.) The property managers' declarations may well be self-serving, 'but where (as here) [they are] uncontradicted, case law establishes that such a showing can provide the basis for summary judgment." (*Trujillo, supra,* 157 Cal.App.4th at p. 636, citing *Golden West Baseball Co. v. Talley* (1991) 232 Cal. App. 3d 1294, 1305 (*Golden West*).)

In addressing an argument like Elliott's argument on appeal in this case, the *Trujillo* court further commented: "Plaintiffs unpersuasively note the court has discretion to deny summary adjudication where a witness's own statement is the only evidence of his or her state of mind. (Code Civ. Proc., § 437c, subd. (e).) '[H]owever, the converse is also true, and a court has the discretion to grant a motion for summary [adjudication] under such circumstances as well.' (*Golden West, supra*, 232 Cal. App. 3d at p. 1306.) Plaintiffs show no abuse of discretion here." (*Trujillo, supra,* 157 Cal.App.4th at p. 636.)

23

Just like the *Trujillo* plaintiffs, Elliott has failed to demonstrate an abuse of *discretion*. According to Elliott, "Hodrick's explanation for why he saw Elliott's face makes no sense. If Hodrick were parked on a dark street in the early morning hours of April 13, 2013 [sic, 2010,] he would not be able to see the face of a driver coming with his headlights on in the direction towards the parked vehicle. Why would Hodrick have the need to point a flashlight on the face of the alleged driver[?] The driver had done nothing wrong, even according to Hodrick. The alleged violation, if any, did not occur until after the phantom vehicle passed Hodrick's vehicle and then made a turn. This was viewed by Hodrick presumably through his rear view mirror. [¶] It appears the evening was fairly quite [sic, quiet] and Deputy Hodrick was in need of some excitement."

In his deposition testimony, Hodrick never stated or suggested that he based Elliott's arrest on his first observation of the driver in the white car. However, Hodrick did explain that, as an experienced traffic and patrol officer who had received specialized training with regard to the estimation of speed, the driver (whom Hodrick later identified as Elliott) first drew his notice when it accelerated past him at a speed he believed to be in excess of the speed limit during the early morning hours of April 13, 2010. According to Hodrick's and Knight's testimony, the driver of the white car appeared to be exceeding the speed limit thereafter, failed to stop at more than one stop sign, "w[o]v[e]" through traffic lanes, and "bl[e]w" a red light--nearly causing a traffic collision, and drove in a manner both traffic and patrol officers described as "reckless" before Hodrick identified Elliott as the driver he had first *seen*, then followed and then pursued, leading to Elliott's arrest.[16]

Therefore, Hodrick presented evidence demonstrating probable cause for Elliott's arrest, while Elliott "failed to 'make an independent showing' through 'admissible

---

[16] According to Knight's declaration, he had been a deputy with the Los Angeles County Sheriff's Department since 1991; according to Hodrick's testimony, he had been a deputy since 1992 (and had been assigned to the Lancaster station since 1995). Hodrick also testified he had attended 40 hours of traffic school, was trained to estimate vehicle speed either approaching or leaving and worked traffic.

evidence presented to the trial court'" (*Trujillo, supra,* 157 Cal.App.4th at p. 636, citation omitted) that, to the contrary, Hodrick lacked probable cause to arrest him and that summary judgment should be denied.

Elliott also asserts the trial court failed to exercise its discretion under subdivision (e) of section 437c "*because of its erroneous belief* that the probable cause determination made by the Magistrate at the preliminary hearing was prima facie evidence of probable cause for purposes of the arrest." (Italics added.) To be clear, just as Elliott argues, the trial court's assertion (that, "[w]hile not conclusive, being held to answer is prima facie evidence of probable cause") is an incorrect statement of the law.

"The issue of 'probable cause' to arrest (or sufficient cause to detain) is simply not the same as—let alone identical to—that of sufficient cause to hold the defendant for trial. (See *People v. Williams* (1989) 213 Cal. App. 3d 1186, 1197 [262 Cal. Rptr. 303] ['The issues before a magistrate on preliminary hearing are whether a public offense has been committed and whether there is probable cause to believe the defendant is guilty thereof'].) Indeed, the existence of cause to arrest or detain is *irrelevant* to the issues before the magistrate, and the defendant may be prohibited on that ground from inquiring into it. (*Ibid.* ['Inasmuch as no suppression motion was made at the preliminary hearing, the only issues before the magistrate were whether a burglary had been committed and whether there was sufficient cause to believe respondent committed it; and defense counsel's questions on cross-examination of the officer relating to his state of mind and what information he had received concerning the break-in had no tendency in reason to prove or disprove the issues before the magistrate'].)" (*Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 767-768, original italics.)

As our Supreme Court has explained, "the preliminary hearing 'is not a trial, and if the magistrate forms a personal opinion regarding the guilt or innocence of the accused, that opinion is of no legal significance whatever in view of the limited nature of the proceedings.'" (*People v. Wallace* (2004) 33 Cal.4th 738, 749, quoting *People v. Uhlemann* (1973) 9 Cal.3d 662, 667, fn. 3; further citations omitted.) "It follows that a

25

magistrate's finding of probable cause to hold a defendant for trial is not a finding of probable cause to arrest (or detain), and that even if it were, the magistrate's limited factfinding powers do not permit the defendant to 'actually litigate' the issue so as to give the magistrate's ruling preclusive effect in a later civil suit." (*Schmidlin v. City of Palo Alto, supra,* 157 Cal.App.4th at p. 768.)

Although the trial court's assertion is troubling (as, indeed, it is a misstatement of the law), viewed in context, we find Elliott's claim that summary judgment was improperly granted "*because of* [the trial court's] erroneous belief" to be a misstatement of the record. First, Elliott mischaracterizes the trial court's statements. In a footnote, the trial court observed—incorrectly—that "being held to answer is prima facie evidence of probable cause. See *Johnson v. Southern Pacific Co.* (1910) 157 Cal. 333, 339 (malicious prosecution); *Deimer v. Herber* (1888) 75 Cal. 287, 290 (same)." However, the trial court expressly stated such evidence was "not conclusive," and further observed that the fact Elliott was held to answer did not appear in Hodrick's separate statement.

More importantly, the trial court determined Hodrick had "established his entitlement to summary judgment on the ground that probable cause existed for the arrest" *because the contents of Hodrick's separate statement* are "complete" and "*supported by the cited evidence*" while Elliott presented *no* evidence to establish a triable issue of material fact in this regard. (Italics added.) In other words, the trial court's ruling demonstrates that the ruling was *not based on* the passing mention in a footnote of an erroneous statement of the law regarding the significance of whether a criminal defendant is "held to answer" at the preliminary hearing in his or her criminal case. To the contrary, the ruling was expressly grounded in the "cited evidence" found in Hodrick's separate statement—which necessarily excluded the preliminary hearing order in Elliott's criminal case (because Hodrick had not cited to the order in his separate statement)—as the undisputed evidence supporting the trial court's determination there was no triable issue of material fact on the issue of probable cause for Elliott's arrest. Thus, notwithstanding the erroneous comment set out in a footnote to the trial court's

26

ruling, the record refutes Elliott's claim the trial court improperly relied on the outcome of his preliminary hearing in granting summary judgment, and the trial court's ruling is correct in any event. (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694, citation omitted ["'Regardless of how the trial court reached its decision, it falls to us to examine the record de novo and independently determine whether that decision is correct'"].)

As the trial court observed in its evidentiary rulings, although Elliott purported to dispute the majority of facts set forth in Hodrick's separate statement (Fact Nos. 1-31, 33-34, 39-40, 43, 56-66, 68-85, 88-89, 94-98, 101-104), he did so by citing to his own declaration, in which (for the most part) he repeatedly stated: "I do not know."[17] Consequently, Elliott failed to support his assertions that facts remained in dispute with *evidence*, as Code of Civil Procedure section 437c, subdivision (d), requires; instead, he actually highlighted the *absence* of contrary evidence.

Similarly, Elliott purported to dispute facts set forth in Hodrick's separate statement by citing his attorney's declaration. First of all, the trial court sustained Hodrick's objections to the entirety of Diamond's declaration, rejecting the statements within that declaration as nothing more than Diamond's own summaries of deposition testimony and characterizations of evidence not contained in the record. Because Elliott has failed to challenge the trial court's evidentiary rulings in this appeal, he has forfeited any claims of error in this regard. (*Food Safety Net Services v. Eco Safe Systems USA, Inc., supra,* 209 Cal.App.4th at p. 1124.)

Moreover, notwithstanding the deficiencies in Diamond's declaration, the trial court nevertheless reviewed the deposition testimony that accompanied Diamond's declaration (and so have we). The thrust of this evidence is that neither Elliott's mother (Valerie Elliott) nor his girlfriend at the time (Amanda Hauber) believed he would have been involved in a police pursuit; Elliott's mother also said the car was cold by the time

---

[17]      As to the balance of Hodrick's asserted undisputed facts, the trial court noted Elliott specifically acknowledged these remaining facts to be undisputed.

Elliott was arrested. As the trial court concluded, such evidence does not create a triable issue of material fact as to whether Elliott's arrest was supported by probable cause. Hauber testified she had left Elliott's house hours before Hodrick observed the white Taurus and the pursuit took place, and Elliott's mother testified she was asleep the entire time—from the time she said she heard the door close as Hauber left until the officers knocked on her door at 4:00 a.m. *Even assuming Elliott had been sleeping and had no involvement whatsoever in the police pursuit,* none of his evidence undermines the evidence Hodrick presented in support of the probable cause determination. (*Johnson v. Lewis, supra,* 120 Cal.App.4th at p. 456 ["'the existence of probable cause is "to be decided in accordance with the circumstances at the time of detention, unhampered by the outcome of the charge against the plaintiff of the public offense or by the conclusions of the trial court. . . ."'"; *Id.* at p. 476, citation omitted ["When, as here, the facts known to an officer are sufficient to constitute probable cause to arrest, the possibility of an innocent explanation does not vitiate probable cause and does not render an arrest unlawful"]; *Levin v. United Air Lines, Inc., supra,* 158 Cal.App.4th at pp. 1017-1018, citations omitted ["'Reasonable cause to arrest exists when the facts known to the arresting officer would lead a reasonable person to have a strong suspicion of the arrestee's guilt. . . .' If the facts that give rise to the arrest are undisputed, the issue of probable cause is a question of law for the trial court"].)

Furthermore, Hodrick's testimony was not the only evidence presented in support of the issue of probable cause. As we have already described, Deputy Knight's testimony provided evidence—in addition to Hodrick's testimony—the car parked in front of Elliott's (parents') house, which Elliott's mother confirmed was Elliott's, was the same white Taurus involved in the pursuit more than an hour and a half before Hodrick identified Elliott as the driver involved in the pursuit and Elliott was arrested. To the extent Hodrick was the only witness to identify Hodrick as the driver of that car, as we have already explained, Elliott presented no evidence to contradict Hodrick's testimony and instead relies on his own mere speculation that Hodrick must have been so

28

embarrassed to have lost the vehicle involved in the pursuit earlier in the night that he later "felt compelled" to identify Elliott as the car's driver and arrest him to somehow "[save] face" with the other deputies—without any basis for believing Elliott was in fact that same driver—because "Hodrick needed to find some vehicle to justify Hodrick's [own] conduct." However, the "bare assertion" the moving party "fabricated key evidence" is insufficient to avoid summary judgment. (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 166.)

To the contrary, "speculation [as opposition to summary judgment] is [not only] impermissible" but it "is grounds for *granting* summary judgment." (*Doe v. Salesian Society* (2008) 159 Cal.App.4th 474, 481, italics added, citing *Yuzon v. Collins* (2004) 116 Cal.App.4th 149, 163, 166 [landlord not liable for tenant's dog bite incident where evidence that landlord knew the dog was dangerous was based on speculation].) "'An issue of fact can only be created by a conflict of evidence. It is not created by "speculation, conjecture, imagination or guess work." . . . Further, an issue of fact is not raised by . . . "conclusory assertions" . . . or mere possibilities . . . .'" (*Yuzon v. Collins, supra,* 116 Cal.App.4th at p. 166, citations omitted.)

Without citation to the record, Elliott says the "best evidence in this case comes from the radio transmissions that were made during the chase" and says these "radio transmissions impeached [Hodrick's] credibility." It does not appear the radio transmissions were presented to the trial court, and we do not find them in the record. (And see fns. 6-8, *ante*.) "A party cannot defeat summary judgment by the expedient of averring he or she has evidence to support a cause of action; instead, such evidence must be presented in opposition to summary judgment."[18] (*Uhrich v. State Farm Fire &*

---

[18] Under subdivision (h) of section 437c, "If it appears from the affidavits submitted in opposition to [a motion for summary judgment or adjudication] that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court *shall* deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may make any other order as may be just. . . ." (Italics added.)

*Casualty Co.* (2003) 109 Cal.App.4th 598, 616-617, citations omitted; and see Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (Rutter Group 2013) [¶][¶] 10:198 to 10:205.1, pp. 10-82 to 10-85.)

Elliott says we must "examine carefully" paragraph 5 of Hodrick's declaration because "[i]t is here where Hodrick's story makes no sense." The "problem[,]" Elliott says, "with Hodrick's declaration is that he cannot have the phantom driver driving too fast because although that would arguably have given Hodrick the right to pursue the phantom driver it would not have enabled Hodrick to actually identify the phantom driver."[19] Again, speculation is both impermissible and insufficient as opposition to summary judgment. (*Doe v. Salesian Society, supra,* 159 Cal.App.4th at p. 481.) Opposing evidence must show a triable issue of material fact; "equivocal" evidence is insufficient as well. (*Ahrens v. Superior Court* (1988) 197 Cal.App.3d 1134, 1152.)

Elliott also says the description Hodrick first broadcast was "that of a white male occupant with blond hair. There was no reference to spiked hair or to a goatee." He

We note Elliott did not request a continuance or make the showing contemplated under section 437c, subdivision (h).

[19] Elliott seems to vaguely imply that Hodrick's declaration contradicted his deposition testimony, but having reviewed this evidence, we see no disavowal of Hodrick's deposition testimony or any statement in his declaration that directly conflicts with that testimony or otherwise suggests Hodrick was lying. (See *Miller v. American Greetings Corp.* (2008) 161 Cal.App.4th 1055, 1061-1062.) Similarly, he vaguely suggests his appearance does not match the description Hodrick provided. Again, however, we find no support for such a claim and instead note only evidence to the contrary in the record before us. For example, he says his hair was not spiky, the color was wrong and his goatee was not mentioned in the broadcast (though he provides no supporting citation to the record). However, Hodrick testified that he was able to provide more details once the pursuit had terminated and his adrenaline level had dropped by the time he participated in a debriefing with his supervisor before he went to Elliott's residence, and Elliott's own testimony corroborates the certainty with which Hodrick immediately identified Elliott as the driver involved in the pursuit. Further, Elliott's booking photos are in the record, and we find no variance from Hodrick's testimony that would support the conclusion the trial court abused its discretion by failing to reject that testimony and to deny summary judgment. (Code Civ. Proc., § 437c, subd. (e).)

asserts it is "noteworthy" Hodrick only identified "simple infractions" and says the dispatcher asked Hodrick for the car's license plate but "Hodrick could not provide it." Even if Hodrick's further description of the driver was correct, Elliott says, "that does not mean that Hodrick was following the correct person. The other deputies did not follow the vehicle after Hodrick lost sight of it." He says Hodrick stated in his declaration the driver was "'driving recklessly'" but "only" stated that "'possibly'" the driver was driving under the influence." He says his car was "cold" and "covered with dew"; it was not "'swamped'" with mud so it could not have been involved in a pursuit. Elliott also makes much of the fact that, although he was held to answer at his preliminary hearing, the charge against him was ultimately dismissed.

All of these assertions only serve to emphasize Elliott's misunderstanding of the law with respect to probable cause for an arrest as well as his own evidentiary burden on summary judgment. Elliott's claim against Hodrick necessarily fails because Elliott failed to identify any *evidence* that would permit a reasonable trier of fact to find in his favor—to find that Hodrick did *not* have probable cause to arrest Elliott. (See *Miller v. American Greetings Corp.* (2008) 161 Cal.App.4th 1055, 1061-1062.)

As we noted at the outset, "'Reasonable cause to arrest exists when the facts known to the arresting officer would lead a reasonable person to have a strong suspicion of the arrestee's guilt. [Citations.] This is an objective standard. [Citations.]' [Citation.] 'It is the right to arrest that is being tested. . . . The question with which we are concerned is not "why did the officer want to arrest this particular defendant?" but rather "was there reasonable cause to arrest this particular defendant?" . . .' [Citations.] "'[S]ufficient probability [that a crime has been committed], not certainty, is the touchstone of reasonableness under the Fourth Amendment.'"" (*People v. Thompson, supra*, 38 Cal.4th at p. 820.)" (*Levin v. United Air Lines, Inc., supra,* 158 Cal.App.4th at pp. 1017-1018.) Therefore, as Hodrick presented undisputed evidence in support of the issue of probable cause on which he sought summary judgment, and Elliott failed to

identify any admissible evidence to create a triable issue of material fact in this regard, Hodrick was entitled to summary judgment.

As the court explained in *Johnson v. Lewis, supra,* 120 Cal.App.4th 443, "'[T]he existence of probable cause is "to be decided in accordance with the circumstances at the time of the detention, unhampered by the outcome of the charge against the plaintiff of the public offense or by the conclusions of the trial court. . . ."'" [Citations.]  Neither an acquittal nor the dismissal of the criminal charges collaterally estops defendants from asserting the lawfulness of plaintiff's arrest.  Accordingly, the dismissal of the criminal charge against plaintiff does *not* vitiate the validity of her arrest. [Citations.]" (*Id.* at p. 456, italics added.)

Furthermore, none of Elliott's assertions impeach Hodrick's credibility to support the conclusion the trial court necessarily abused its *discretion* within the meaning of subdivision (e) of section 437c in granting summary judgment.  To the extent Elliott's argument is that the trial court should not have accepted as truthful Hodrick's statements as to his own state of mind and instead a jury should evaluate Hodrick's credibility, his argument fails in light of the standard of review—*abuse of discretion*.  In addressing essentially the same argument in *Butcher v. Gay* (1994) 29 Cal.App.4th 388, 404-405, the court explained:  "Although the [trial] court *could* have refused to accept [the moving party's] assertion about [her] own state of mind, it was *not required* to do so. Subdivision (e) of the summary judgment statute provides that 'summary judgment may be denied in the discretion of the court . . . where a material fact is an individual's state of mind, or lack thereof, and that fact is sought to be established solely by the individuals affirmation thereof.'  The court therefore did not err in refusing to deny the motion on this basis."  Elliott's argument fails for precisely the same reason.  Under subdivision (e), the trial court had no obligation to refuse to believe Hodrick, and on the record presented in this case, we find no basis for concluding the trial court abused its discretion in granting summary judgment in Hodrick's favor.

Our determination there is no triable issue with respect to the issue of probable cause and the lawfulness for Elliott's arrest obviates the need to address Hodrick's further arguments. (*Johnson v. Lewis, supra,* 120 Cal.App.4th at p. 457.)

### *DISPOSITION*

The judgment is affirmed. Hodrick is entitled to his costs on appeal.

**WOODS, J.**

**We concur:**

**PERLUSS, P. J.**                    **SEGAL, J.**[*]

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.