[No. C043427. Third Dist. July 7, 2004.]

POLLY JOHNSON, Plaintiff and Appellant, v.
SCOTT LEWIS et al., Defendants and Respondents.

444

**COUNSEL**

Roger M. Miller for Plaintiff and Appellant.

Bolling, Walter & Gawthrop, John A. Whitesides and Michael F. Keddy for Defendant and Respondent Scott Lewis.

Porter, Scott, Weiberg & Delehant, Terence J. Cassidy and John R. Whitefleet for Defendant and Respondent County of Sacramento.

Law Offices of Bailey & Brown and Charles H. Briggs III for Defendant and Respondent Sacramento Metropolitan Fire Protection District.

## OPINION

**SCOTLAND, P. J.**—Time and again, public confidence in our legal system is tested when the general public wonders, and mutters, about why courts entertain ridiculous lawsuits. As will soon become apparent, this is such a case. Here, a person who admittedly violated the law, and posed a danger to others, unjustifiably accuses authorities of wrongfully arresting her. Fortunately, although our system of justice necessarily provides a forum for even the most ridiculous lawsuits, it also provides a vehicle, summary judgment, to relatively quickly rid the judicial system of unmeritorious cases.

Plaintiff Polly Johnson sought to recover in tort based upon her arrest by defendant Scott Lewis, an arson investigator with peace officer authority (Pen. Code, § 830.37, subd. (a)), for her commission of traffic offenses. Plaintiff's asserted causes of action are dependent upon the claim that her arrest was unlawful because Lewis lacked probable cause to arrest her.

Defendants Lewis, the Sacramento County Fire Protection District, the Sacramento County Sheriff's Department, and the County of Sacramento moved for summary judgment. Concluding undisputed evidence established that Lewis had probable cause to arrest plaintiff, the trial court entered summary judgments in favor of defendants.

Plaintiff appealed. Thereafter, the case took on an unusual posture.

We calendared the matter for oral argument on the merits of the appeal and also on this court's order directing plaintiff and her appellate counsel to show cause why sanctions should not be imposed against them if we conclude not only that the appeal lacks merit but that it is frivolous.

The parties then submitted to this court a written stipulation, signed by counsel, asking us to take the matter off calendar and to "approve abandonment of the appeal" because "[i]t is hereby stipulated and agreed by the parties that the appeal in this matter may be abandoned upon the conditions hereafter recited: [¶] Within 5 business days of the approval of the abandonment of the appeal, the plaintiff shall pay the agreed amount for costs to each of the defendants as follows: [¶] 1. To the defendant Sacramento County, the sum of $2,000. [¶] 2. To the defendant Scott Lewis, the sum of $2,500. [¶] 3. To the defendant Sacramento County Fire Protection District[,] the sum of $2,500."

■ The purpose of sanctions is to discourage frivolous appeals and to compensate to some extent for the loss that results due to a frivolous appeal. (*Bach v. County of Butte* (1989) 215 Cal.App.3d 294, 312 [263 Cal.Rptr.

565].) To that end, sanctions may be imposed payable not only to opposing parties but also to the court to compensate it for the expense of processing, reviewing, and deciding a frivolous appeal. (*Ibid.*) Because appellant's agreement to pay costs to respondents does not address costs incurred by this court, we issued the following order: "The court has determined to . . . approve the stipulation and dismiss the appeal conditioned upon appellant and her attorney only appearing for oral argument . . . to address whether sanctions payable to the court should be ordered against appellant and her attorney. If appellant and her attorney agree to this condition, then oral argument will be limited to whether an award of sanctions payable to this court should be imposed and the appeal will thereafter be dismissed as abandoned under the other conditions agreed upon by the parties. If appellant and her attorney do not agree to this condition, then oral argument on both the merits of the appeal and the issue of sanctions will proceed . . . with appellant and counsel for all parties appearing. [¶] Appellant and her attorney shall inform this court and counsel for respondents in writing . . . whether they agree that appellant will abide by the stipulation of the parties and also appear in this court with her attorney . . . to address whether sanctions payable to this court should be ordered against appellant and her attorney."

Appellant and her attorney responded by filing a document stating that they would appear at oral argument to address whether they also should be ordered to pay sanctions to this court for prosecuting a frivolous appeal, and that plaintiff will abide by the parties' stipulation as to her payment of costs to defendants.

In a return to the order to show cause and at oral argument, plaintiff's attorney asserted that the appeal was not brought in bad faith and is not otherwise frivolous. We disagree as to the second point. As we will explain, monetary sanctions payable to the court are appropriate because this appeal is frivolous in that it indisputably has no merit. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179].)

## FACTUAL AND PROCEDURAL BACKGROUND

On December 3, 1999, defendant Lewis was employed by the Sacramento County Fire Protection District as an arson investigator.[1] As an arson investigator, Lewis had the status of a peace officer. (Pen. Code, § 830.37, subd. (a).) His duties required him to be on call 24 hours a day, seven days a week. He was assigned a district van for use in the performance of his duties.

Although December 3 was Lewis's regularly scheduled day off, he decided to go to the office to complete some reports. En route, he drove his

---

[1] The Sacramento County Fire Protection District subsequently merged with another district and became the Sacramento County Metropolitan Fire District.

district van onto Highway 50. At about the same time, plaintiff left her home to drive to her job in Folsom. She entered Highway 50 and moved to the far left lane.

Lewis testified he first noticed plaintiff when, in the far left lane, she drove to within a few feet of his van. Plaintiff abruptly moved to the second lane, passed Lewis, cut in front of him, nearly hitting his van, and sped off down the road. Lewis used his cell phone to call the sheriff's communication center to report a reckless driver.

When plaintiff caught up to the next vehicle in the far left lane, she abruptly crossed three lanes of traffic to the far right lane without signaling. As she did so, several other drivers had to apply their brakes to avoid a collision. Because plaintiff was endangering other motorists, Lewis decided to make a vehicle stop. He used his radio to call the sheriff's department for assistance.

Lewis caught up to plaintiff, who was back in the far left lane, and turned on his red light and siren. Plaintiff responded by fleeing. She drove for several miles at speeds that reached 90 to 95 miles an hour before finally stopping.

Plaintiff testified she first noticed Lewis when he came up behind her in the far left lane. At that time, she was driving between 70 and 75 miles per hour. While conceding that she was exceeding the speed limit, plaintiff claimed she was just going with the flow of traffic. When she saw the red light and heard the siren, she moved to the next lane and accelerated. During what she calls "the chase," she made several lane changes and speed changes in an effort to get away from Lewis. After five to 10 minutes, she pulled to the side of the road and stopped. Plaintiff explained her conduct by saying that, although the red light and siren indicated Lewis might be a law enforcement officer, she thought it was more likely that he was a "road-rage driver."

When plaintiff stopped, Lewis directed her to get out of the car. He put handcuffs on her. Sheriff's Deputy Maubach then arrived, and plaintiff was placed in the back of Maubach's patrol car. Lewis asked for and received permission to search plaintiff's car. Maubach called for a driver's license check. The search and license check were negative. Lewis then decided to issue a citation for reckless driving and to release plaintiff.

The Sacramento County Fire Protection District had a policy against its arson investigators making off-duty misdemeanor traffic arrests. When Fire Marshal Vernon Brown learned of this incident, he contacted plaintiff and solicited a citizen's complaint against Lewis from her, which Brown sustained. Brown ultimately met with the prosecutor and successfully asked that the traffic citation be dismissed.

Plaintiff then commenced this lawsuit against Lewis, the Sacramento County Fire Protection District, the Sacramento County Sheriff's Department, and the County of Sacramento. She seeks compensatory and punitive damages for false imprisonment, assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress, interference with civil rights (42 U.S.C. § 1983), and malicious prosecution.[2] The trial court granted summary judgment in favor of all defendants.

## DISCUSSION

### I

■ The purpose of summary judgment is to determine whether the parties possess evidence that requires the weighing procedures of a trial. (*Lyons v. Security Pacific Nat. Bank* (1995) 40 Cal.App.4th 1001, 1013 [48 Cal.Rptr.2d 174].) Accordingly, a motion for summary judgment should be denied when the parties' submissions demonstrate the existence of a triable issue of material fact. (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1065 [225 Cal.Rptr. 203].)

■ On appeal from the entry of a summary judgment, we apply the same standard that was applicable in the trial court, i.e., we independently review the record to determine whether there are triable issues of material fact. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767 [107 Cal.Rptr.2d 617, 23 P.3d 1143].) In doing so, we view the parties' evidentiary submissions in a light most favorable to the appellant as the losing party. (*Id.* at p. 768.) Summary judgment will be upheld when the evidence, viewed in such a light, demonstrates that there is no material issue of fact which requires the process of a trial so that the respondent is entitled to judgment as a matter of law. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P.3d 1089].)[3]

[2] Plaintiff alleges that by assisting Lewis in the detention, Maubach, who is named as Doe 1, conspired with him to commit the alleged torts. Plaintiff sets forth her claim of civil conspiracy as two separate "causes of action." Civil conspiracy is a theory upon which a conspirator can be held liable for the torts of his coconspirators even though he did not personally participate. (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510–511 [28 Cal.Rptr.2d 475, 869 P.2d 454].) It is not an independent tort. (*Ibid.*)

[3] The Sacramento Metropolitan Fire Protection District asserts that we should view the record in a light most favorable to the prevailing party, including drawing all reasonable inferences and resolving all conflicts in the evidence in support of the judgment. According to this argument, we should affirm so long as the judgment is supported by evidence. That is the standard of review that is applicable when a case has been tried and issues of fact have been resolved by the trier of the facts. The purpose of summary judgment is not to revolve issues of fact, but simply to determine whether there are issues of fact that must be resolved through a trial. (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d

## II

All of plaintiff's asserted causes of action hinge upon the validity of her arrest. She has neither alleged, nor pointed to evidence of, conduct that would support a tort cause of action independent of a determination that the arrest was unlawful. Accordingly, we turn first to plaintiff's claim that the arrest was unlawful because Lewis lacked probable cause to arrest her.

In claiming that there are triable issues of material fact with respect to whether Lewis had probable cause to arrest her, plaintiff focuses on the offense for which she was ultimately cited, reckless driving. (Veh. Code, § 23103.) However, the question of probable cause to arrest is not so circumscribed.

■ Probable cause means that the arresting officer was aware of facts that would lead a person of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that an individual is guilty of a crime. (*People v. Harris* (1975) 15 Cal.3d 384, 389 [124 Cal.Rptr. 536, 540 P.2d 632].) If an officer has probable cause to believe a person is guilty of a crime, probable cause is not vitiated and an arrest remains valid even if the officer purports to arrest the person for the wrong crime. (*People v. Rodriguez* (1997) 53 Cal.App.4th 1250, 1262–1265 [62 Cal.Rptr.2d 345]; *People v. Goldberg* (1984) 161 Cal.App.3d 170, 179 [207 Cal.Rptr. 431]; *People v. Lewis* (1980) 109 Cal.App.3d 599, 609 [167 Cal.Rptr. 326]; *In re Donald L.* (1978) 81 Cal.App.3d 770, 775 [146 Cal.Rptr. 720].)

■ Lewis first noticed plaintiff when she drove to within a few feet of his van, cut in front of him nearly hitting the van, and sped off down the crowded highway before he could catch up with her. By her own admission, plaintiff was driving at 70 to 75 miles an hour when she first noticed Lewis behind her. When asked if that was exceeding the speed limit, she said, "Sure." Driving in excess of the speed limit establishes a prima facie case of a speeding violation. (Veh. Code, §§ 22351, subd. (b), 40000.1, 41100.) That subjected plaintiff to arrest and citation with a notice to appear (Pen. Code, § 836, subd. (a); Veh. Code, § 40500) for a crime that under the circumstances of this case posed an immediate danger to persons or property.

■ While Lewis was behind plaintiff in traffic, he activated his red light and siren. Plaintiff was thereby obligated to "immediately drive to the right-hand edge or curb of the highway, clear of any intersection, and

---

46].) The standard of review of a summary judgment is, essentially, the opposite of the standard of review of a judgment after trial. We review the record most favorably to the losing party and must reverse and remand for trial if there is evidence that would support a judgment in that party's favor. (*Ibid.*)

thereupon . . . stop and remain stopped." (Veh. Code, § 21806, subd. (a)(1).) Her failure to do so, speeding off instead, was an infraction that subjected her to arrest and citation (Veh. Code, §§ 40000.1, 40500) for a crime that posed an immediate danger to persons or property.

■ Instead of pulling over, plaintiff moved to the next lane and accelerated. She led Lewis on what she calls a chase. Although plaintiff did not look at her speedometer and could not estimate how fast she was driving, Lewis estimated that plaintiff reached speeds of 90 to 95 miles per hour. Plaintiff made several lane changes and several speed changes in attempting to get away from Lewis. Throughout the chase, there was traffic around plaintiff. This behavior gave Lewis probable cause to cite plaintiff for reckless driving (Veh. Code, § 23103) that posed an immediate danger to persons or property, a crime.

■ Plaintiff did not deny the behavior that led Lewis to stop her. In fact, she admitted the conduct but offered explanations for her conduct. Thus, plaintiff admitted that she was speeding but said she was just keeping with the flow of traffic. When Lewis activated his red light and siren, plaintiff thought he might be a peace officer but also thought he could be a private person in a fit of road rage; so she did not drive to the right-hand side of the road and stop but instead fled from him. When, as here, the facts known to an officer are sufficient to constitute probable cause to arrest, the possibility of an innocent explanation does not vitiate probable cause and does not render an arrest unlawful. (*Kodani v. Snyder* (1999) 75 Cal.App.4th 471, 476–477 [89 Cal.Rptr.2d 362].)

Plaintiff asserts reckless driving requires that the driver "intentionally did something with knowledge that injury to another was probable or acted with a wanton and reckless disregard for the safety of others and in reckless disregard of the consequences of [her] acts." (*People v. Schumacher* (1961) 194 Cal.App.2d 335, 338 [14 Cal.Rptr. 924].) The assertion does not help plaintiff for two reasons.

■ First, the validity of an arrest is measured by whether the facts known to the officer support a reasonable suspicion of criminal activity, not whether the facts are sufficient to convict. (*People v. Hill* (1974) 12 Cal.3d 731, 749 [117 Cal.Rptr. 393, 528 P.2d 1], overruled on another ground in *People v. DeVaughn* (1977) 18 Cal.3d 889, 896, fn. 5 [135 Cal.Rptr. 786, 558 P.2d 872].) Plaintiff's own testimony described conduct in which she led Lewis on a chase, during which she made numerous quick lane changes and speed changes while surrounded by other motorists. This conduct amply supported a reasonable suspicion of reckless driving.

Second, Lewis unquestionably had probable cause to arrest plaintiff for speeding and for failing to pull over and stop when he activated his red light and siren. Accordingly, even if Lewis had erred in citing plaintiff for reckless driving, the arrest was still valid. (*People v. Rodriguez, supra,* 53 Cal.App.4th at pp. 1262–1265; *People v. Goldberg, supra,* 161 Cal.App.3d at p. 179; *People v. Lewis, supra,* 109 Cal.App.3d at p. 609; *In re Donald L., supra,* 81 Cal.App.3d at p. 775.)

Plaintiff claims there are triable issues of fact with respect to Lewis's motivation and good faith in stopping her. We disagree.

■ Probable cause is measured by an objective rather than subjective standard. (*People v. Rodriguez, supra,* 53 Cal.App.4th at p. 1266.) Where, as here, an officer has probable cause to make an arrest, we will not inquire into his subjective motivations. (*Ibid.*)

In any event, we cannot agree with plaintiff that Lewis's motivation is questionable. In stopping her and ultimately issuing a traffic citation, Lewis's actions were entirely consistent with a law enforcement motivation. He did not do or say anything which would indicate any motivation other than law enforcement. He did not, for example, make sexual comments to plaintiff or attempt to ask her for a date. He did not attempt to solicit a bribe. He did not try to steal any of her property. In short, there is nothing in the record that would suggest Lewis had any motivation other than enforcement of the traffic laws.

Next, plaintiff cites Penal Code sections 830.37 and 836 for the proposition that her arrest was unlawful because, as an arson investigator, Lewis lacked the authority to make an off-duty arrest for a traffic violation. Not so.

■ Subdivision (a) of Penal Code section 836 states in pertinent part: "A peace officer may arrest a person in obedience to a warrant, or, pursuant to the authority granted to him or her by Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, without a warrant, may arrest a person whenever any of the following circumstances occur: [¶] (1) The officer has probable cause to believe that the person to be arrested has committed a public offense in the officer's presence. . . ." Penal Code section 830.37 extends peace officer status to arson investigators and provides that their authority "extends to any place in the state for the purpose of performing their primary duty *or* when making an arrest pursuant to Section 836 as to *any* public offense with respect to which there is immediate danger to person or property, or of the escape of the perpetrator of that offense . . . ." [Italics added.] The broad scope of this statutory authority authorized Lewis to make an off-duty arrest for a traffic violation that posed an immediate danger to persons or

property. (See *Inouye v. County of Los Angeles* (1994) 30 Cal.App.4th 278, 284 [35 Cal.Rptr.2d 367] [construing identical language in Pen. Code, § 830.31].) And the undisputed facts demonstrated that plaintiff's driving posed such a danger.

■ Nevertheless, Lewis's employer had a departmental policy against arson investigators making off-duty traffic arrests. But here we are not concerned with whether an employer can administratively restrict a statutory peace officer's authority to arrest or whether discipline can be imposed for the violation of such a policy. The issue is whether plaintiff can maintain an action in tort on the basis that her arrest was unlawful. In this respect, the trial court correctly concluded that local policy cannot override the authority granted by the Legislature. (See *Inouye v. County of Los Angeles, supra,* 30 Cal.App.4th at pp. 284–285.) Plaintiff was arrested on probable cause by a peace officer with statutory authority to effectuate the arrest. Therefore, the arrest cannot form the basis for a cause of action in tort. (*Hamilton v. City of San Diego* (1990) 217 Cal.App.3d 838, 843–844 [266 Cal.Rptr. 215].)

Plaintiff argues the totality of Lewis's conduct, including his conduct after plaintiff stopped her car, rendered her arrest unlawful. Again, we disagree.

After plaintiff stopped on the side of the road, Lewis told her to get out of the car, put handcuffs on her, did a pat-down search for weapons, placed plaintiff in the back of Deputy Maubach's patrol car, and asked for and received permission to search plaintiff's car.

■ Before plaintiff stopped her car, she had led Lewis on a high-speed chase on a busy freeway. When plaintiff finally stopped, Lewis was entitled to use handcuffs and detain her in the back of a patrol car. (Pen. Code, §§ 835, 835a.) Upon arresting her, he was entitled to conduct a pat-down search for weapons. (*In re Ian C.* (2001) 87 Cal.App.4th 856, 860 [104 Cal.Rptr.2d 854]; *In re Humberto O.* (2000) 80 Cal.App.4th 237, 243 [95 Cal.Rptr.2d 248]; *In re Charles C.* (1999) 76 Cal.App.4th 420, 424–425 [90 Cal.Rptr.2d 430].) And plaintiff presented no evidence to dispute that she consented to the search of her car. (*People v. Ramirez* (1997) 59 Cal.App.4th 1548, 1558–1559 [70 Cal.Rptr.2d 341].) There was nothing in Lewis's conduct after he arrested plaintiff that would vitiate the validity of the arrest and render it unlawful.

In sum, Lewis was a peace officer who, pursuant to Penal Code sections 830.37 and 836, had the statutory authority to make an arrest on probable cause that a traffic offense posing a danger to persons or property was committed in his presence. The record, including plaintiff's own description

of the events, establishes the probable cause which was necessary for an arrest by Lewis. Hence, we reject plaintiff's contention that there are triable issues of material fact with respect to the validity of the arrest.

### III

Fire Marshal Brown accompanied plaintiff at the time she was to appear on the traffic citation. Without going into a great amount of detail, he told the prosecutor that the citation had been issued in error or outside the scope of the employee's job. The prosecutor agreed to ask for dismissal. The citation was dismissed with the notation "I E," which apparently stands for insufficient evidence. Plaintiff contends the dismissal collaterally estops defendants from arguing that the arrest was supported by probable cause. She is wrong.

 First, "the existence of probable cause is 'to be decided in accordance with the circumstances at the time of the detention, unhampered by the outcome of the charge against the plaintiff of the public offense or by the conclusions of the trial court. . . .' " (*White v. Martin* (1963) 215 Cal.App.2d 641, 651 [30 Cal.Rptr. 367]. See also *People v. Wilkins* (1972) 27 Cal.App.3d 763, 769 [104 Cal.Rptr. 89].) Neither an acquittal nor the dismissal of the criminal charges collaterally estops defendants from asserting the lawfulness of plaintiff's arrest. (*People v. Backus* (1979) 23 Cal.3d 360, 396–397 [152 Cal.Rptr. 710, 590 P.2d 837]; *Lofthouse v. Department of Motor Vehicles* (1981) 124 Cal.App.3d 730, 736–737 [177 Cal.Rptr. 601].) Accordingly, the dismissal of the criminal charge against plaintiff does not vitiate the validity of her arrest.

 Second, collateral estoppel applies only when it is shown that a factual issue which is identical to an issue in the current case was actually litigated and necessarily determined in a prior, final adjudication. (*Department of Industrial Relations v. Seaboard Surety Co.* (1996) 50 Cal.App.4th 1501, 1512 [58 Cal.Rptr.2d 532]; *Stolz v. Bank of America* (1993) 15 Cal.App.4th 217, 222–223 [19 Cal.Rptr.2d 19]; *Barker v. Hull* (1987) 191 Cal.App.3d 221, 225–226 [236 Cal.Rptr. 285].) There was no litigation on the criminal charge. The charge was dismissed at the behest of the prosecutor, citing insufficient evidence. The validity of plaintiff's arrest was neither actually litigated nor necessarily resolved in the criminal court. Consequently, collateral estoppel cannot apply.

### IV

Plaintiff makes arguments with respect to issues of civil conspiracy, respondeat superior, ratification of conduct, and statutory immunities. Our determination that there are no triable issues of fact with respect to the issues

of probable cause and the lawfulness of plaintiff's arrest obviates the necessity of discussing these issues.

V

Having found that plaintiff's appeal lacks merit, we turn now to the question whether the appeal is frivolous.

"[A]n appeal may be found frivolous and sanctions imposed when (1) the appeal was prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment; or (2) the appeal indisputably has no merit, i.e., when any reasonable attorney would agree that the appeal is totally and completely without merit." (*Bach v. County of Butte, supra,* 215 Cal.App.3d at p. 310, citing *In re Marriage of Flaherty, supra,* 31 Cal.3d at p. 650 (hereafter *Flaherty*).)

"*Flaherty* cautions that 'any definition [of a frivolous appeal] must be read so as to avoid a serious chilling effect on the assertion of litigants' rights on appeal. Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal. An appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions.' ([*Flaherty, supra,*] 31 Cal.3d at p. 650.)" (*Bach v. County of Butte, supra,* 215 Cal.App.3d at p. 310, orig. italics.)

However, this limitation has no application here. In light of the undisputed facts of this case and applicable principles of law, we can think of no reasonable legal analysis from which any of the arguments advanced by plaintiff in this appeal are arguably correct. To the contrary, as explained in our opinion, our review of the cause persuades us that the issues raised by plaintiff are totally devoid of merit and that any reasonable attorney familiar with the law and the facts of this case would not have pursued this appeal.

At oral argument on the question of sanctions, plaintiff's attorney took full responsibility for the decision to appeal and, thus, asserted that if sanctions are to be imposed, they should be imposed against him only, not plaintiff. Accordingly, we sanction plaintiff's attorney by ordering him to pay to the Court of Appeal, Third Appellate District, within five days after this opinion is final, the sum of $2,500 to compensate this court in part for the expense of processing and reviewing this appeal.

And in accordance with the parties' stipulation, we order plaintiff to pay, within five days after this opinion becomes final, costs to defendants as follows: to Scott Lewis, the sum of $2,500; to Sacramento County, the sum of $2,000; and to the Sacramento County Fire Protection District, the sum of $2,500.

## VI

Having "dodged a bullet," so to speak, when the criminal case against her was dismissed despite the existence of ample probable cause to arrest her for endangering the public by driving recklessly at high speeds on a crowded freeway, plaintiff did not just go home and celebrate her good fortune. She filed a meritless lawsuit and then wasted this court's time and resources by pursuing a frivolous appeal after the trial court entered judgment in defendants' favor. As a consequence, plaintiff is now saddled with paying $7,000 in costs to defendants. And having fallen on his sword for her, plaintiff's attorney must pay $2,500 in sanctions to this court. "The moral of this story" is that there is a price to pay for plaintiff's insolence.

## DISPOSITION

Sanctions in the amount of $2,500, to be paid to the Court of Appeal, Third Appellate District, as directed in this opinion, are imposed against plaintiff's attorney for prosecuting a frivolous appeal. Pursuant to the parties' stipulation, costs are to be paid by plaintiff to defendants as specified in the stipulation and as directed in this opinion. Plaintiff's request to abandon the appeal is granted, and the appeal is dismissed.

This opinion constitutes a written statement of our reasons for imposing sanctions. (*Bach v. County of Butte, supra,* 215 Cal.App.3d at p. 313.) Pursuant to the requirements of Business and Professions Code section 6086.7, subdivision (a)(3), a copy of this opinion will be forwarded to the State Bar of California.

Raye, J., and Morrison, J., concurred.