Filed 12/10/15  In re J.T. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re J.T., a Person Coming Under the Juvenile Court Law. | B261128 (Los Angeles County Super. Ct. No. DK04812) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. JOHNSON L., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Tony L. Richardson, Judge.  Reversed.

Grace E. Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for plaintiff and Respondent.

_____

Johnson L. (father) appeals a juvenile court order that reconfirmed a previous order declaring that he was the alleged father of J.T. (minor).[1] We reverse because the juvenile court abused its discretion when it denied counsel's request for a brief delay of a paternity hearing in order to locate father.

**FACTS**

The minor was born in March 2003. She has a different father than her three younger siblings.

In April 2014, F.Q. (mother) and her husband, Tony Q. (stepfather), had an argument in the front yard of their home. He grabbed her by the hair and dragged her inside. This led to stepfather's arrest.

The Los Angeles Department of Children and Family Services (Department) investigated. The minor told a social worker that she did not see the incident. She denied ever seeing mother and stepfather fight, and denied that anyone breaks anything in the home. When asked if she was afraid of stepfather, the minor said, "No. He is nice." The minor said she was happy living with mother and stepfather, and that they took good care of her.

At first, mother told the social worker that the minor's biological father was Solomano F. Later, however, she corrected the record and identified father as the biological father. She said she did not know where he was, and that the last time she had contact with him was when the minor was one-year-old. She said he "occasionally" paid child support.

The Department filed a petition alleging that the minor, as well as her younger siblings, were at risk of harm within the meaning of Welfare and Institutions Code

---

[1]      In his notice of appeal, father states that he is appealing from the juvenile court's December 2, 2014, failure to find that he is the natural father of the minor. In his opening brief, father contends that the juvenile court erred when it failed to grant him a brief continuance on December 2, 2014. Because both of these failures are ancillary to the order reconfirming prior orders declaring father to be an alleged father, we construe the appeal as being from that reconfirming order.

2

section 300, subdivisions (a) and (b).[2]  In part, the petition alleged that mother and stepfather engaged in a physical altercation.  According to the petition, there was a risk of harm to minor and her siblings due to mother's failure to protect them by allowing stepfather to live in their home.

At the detention hearing, the juvenile court found a prima facie case showing that the minor and her siblings were dependents.  It released the minors to mother.  In addition, it declared father to be an alleged father.

After obtaining father's e-mail address through the child support index, the social worker sent an e-mail to him.  He provided his phone number and his address on the central coast of California near San Luis Obispo.  According to father, he was employed in the oil industry, he had been married for 20 years, and he had five children from that marriage.  He claimed that he had paid child support for the minor in the amount of $700 per month since her birth; mother and stepfather made the decision that father should not be involved in the minor's life; mother denied father visitation despite his many requests; and father wanted to remain civil and respectful, so he never pursued the matter in court.

On June 12, 2014, father appeared at the jurisdiction hearing and filed a statement regarding parentage in which he indicated that he had told everyone in his family that the minor is his.  He also indicated that he had attended large family events with the minor, including a birthday party.  He was designated a nonoffending parent.  The matter was continued for a further hearing on jurisdiction, and also for a hearing regarding parentage.

A few months later, father appeared at the continued hearing by telephone.  Mother pleaded no contest, and the juvenile court sustained the petition in part and dismissed it in part.  The plan was for father to testify with respect to the parentage issue, but there was a poor telephone connection.  As a result, the issue could not be resolved.  Based on a recommendation by the Department, father's counsel requested unmonitored

---

[2]  All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

3

visitation. Minor's counsel objected because father remained an alleged father. The juvenile court denied the request and stated that any visitation had to be monitored.

At 2:20 p.m., on December 2, 2014, the parties convened for a parentage hearing. Father was not present. However, father's counsel indicated that he had checked in with the court. She requested that the juvenile court either "pass the matter or . . . continue the matter briefly for [counsel] to attempt to locate [her] client." The juvenile court replied, "Well, the matter is on the board as ready. He's either here or he's not. We will proceed." According to counsel, father qualified as a *Kelsey S.*[3] father. She requested a finding that he was a presumed father pursuant to *Kelsey S.* or, at a minimum, that he was the natural father. The juvenile court made no express findings, essentially leaving in place the prior alleged father finding. The minute order stated, inter alia, "All prior orders not in conflict shall remain in full force and effect."

Regarding disposition, the juvenile court ordered the minor and her siblings placed with mother under the Department's supervision. The Department was ordered to provide family maintenance services for mother and stepfather. Father was granted unmonitored visitation.

This appeal followed.[4]

On June 19, 2015, the juvenile court terminated jurisdiction. The juvenile court issued family law orders granting mother physical custody, and granting her and father joint legal custody. In addition, father was granted visitation as set forth on a JV-205 form. We requested and received letter briefs from the parties discussing whether this appeal is moot.

---

[3]     See *Adoption of Kelsey S.* (1992) 1 Cal.4th 816 (*Kelsey S.*).

[4]     The Department did not file a respondent's brief. When no respondent's brief has been filed, an appellate court may decide an appeal on the record, the opening brief, and any oral argument by the appellant. (*In re Marriage of Oliverez* (2015) 238 Cal.App.4th 1242, 1247; Cal. Rules of Court, rule 8.220(a)(2).)

4

## DISCUSSION

### I. This Appeal Is Not Moot.

Because dependency jurisdiction was terminated on June 19, 2015, and father was granted joint legal custody and visitation, we must determine whether this appeal should be dismissed on the ground that it is moot. (*In re E.T.* (2013) 217 Cal.App.4th 426, 435 (*In re E.T.*); *In re Dani R.* (2001) 89 Cal.App.4th 402, 404 (*In re Dani R.*).) "'[A]n action that originally was based on a justiciable controversy cannot be maintained on appeal if all the questions have become moot by subsequent acts or events. A reversal in such a case would be without practical effect, and the appeal will therefore be dismissed.' [Citation.]" (*Ibid.*) An issue is not moot if the purported error might impact the result a subsequent proceeding. (*In re E.T.*, *supra*, at p. 436.) "The question of mootness in a dependency case should be decided on a case-by-case basis[.]" (*In re Dani R.*, *supra*, at pp. 404–405.)

We conclude that father's current status as an alleged father is not a moot issue. The December 2, 2014, hearing was a contested hearing on parentage, and the juvenile court's ruling might trigger collateral estoppel on the theory that father's status was actually litigated and necessarily decided (*Johnson v. Lewis* (2004) 120 Cal.App.4th 443, 456) because it reconfirmed all prior orders, which included the prior declarations that father was an alleged father.[5] The juvenile court's custody and visitation orders are subject to modification (§ 302, subd. (d)), and father's adjudicated status could impact any future modification. Also, father could be prejudiced in a future dependency case because his adjudicated status could negatively impact his right to custody, reunification services and visitation.

---

[5] Though the juvenile court declared father an alleged father at prior stages of the dependency case, those declarations were not adjudications arising out of contested hearings and would not have collateral estoppel effect in future proceedings. Thus, those prior declarations do not impact our analysis.

5

## II. The Merits.

Under California law, a man may be a presumed, natural or alleged father of a child. Presumed father status is based on a familial relationship between the man and child, not on biology, and that status entitles him to reunification services, with custody being an option. A natural father is a man who has proven paternity but has not attained presumed father status. (*In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1461 (*Hunter W.*).) He is not entitled to reunification services, but they can be ordered in the juvenile court's discretion if it determines that those services will benefit the child. (*Francisco G. v. Superior Court* (2001) 91 Cal.App.4th 586, 596.) Finally, an alleged father is a man who might be a child's natural father, but neither paternity nor presumed father status have been established. Because he has no known current interest, an alleged father has limited rights, i.e., a right to notice of the proceedings, which provides an opportunity for him to appear and assert a position. (*Ibid.*)

Apart from the law above, a man may have rights under *Kelsey S.*

*Kelsey S.* was a private adoption case rather than a dependency case. The question presented was "whether the father of a child born out of wedlock may properly be denied the right to withhold his consent to his child's adoption by third parties despite his diligent and legal attempts to obtain custody of his child and to rear it himself, and absent any showing of the father's unfitness as a parent." (*Kelsey S.*, *supra*, 1 Cal.4th at p. 821.) The court held that "under these circumstances, the federal constitutional guarantees of equal protection and due process require that the father be allowed to withhold his consent to his child's adoption and therefore that his parental rights cannot be terminated absent a showing of his unfitness." (*Ibid.*) "Although *Kelsey S.* was not a dependency case, courts have extended its holding to dependency proceedings granting *Kelsey S.* fathers constitutional protections in those proceedings. [Citation.] Courts have upheld a *Kelsey S.* father's right to seek reunification services. [Citations.]" (*Hunter W.*, *supra*, 200 Cal.App.4th at p. 1462.)

In determining whether a man qualifies as a *Kelsey S.* father, a juvenile court will consider the man's "'conduct before and after the child's birth, including whether he

6

publicly acknowledged paternity, paid pregnancy and birth expenses commensurate with his ability to do so, and promptly took legal action to obtain custody of the child. [Citation.]'" (*Hunter W., supra,* 200 Cal.App.4th at p. 1462.) The man "'must demonstrate a full commitment to his parental responsibilities within a short time after he learned that the biological mother was pregnant with his child. [Citation.] He must also demonstrate a willingness to assume full custody. [Citation.]' [Citation.]" (*Id.* at pp. 1461–1462.) Further, he must show that the mother or a third party prevented him from becoming a presumed father. (*Ibid.*)

Given the foregoing, father had an interest in seeking to change his status from alleged father to either a *Kelsey S.* father or a natural father. Moreover, we note that a "dependency court has a duty to determine the parentage of a child when a man appears at a hearing requesting a paternity finding. [Citation.]" (*In re Vincent M.* (2008) 161 Cal.App.4th 943, 959.) In light of these considerations, we turn to the juvenile court's denial of a brief continuance of the parentage hearing. Specifically, we consider whether *Hunter W.* supports father's appeal.

In *Hunter W.*, a child was removed from a mother and declared a dependent of the juvenile court. About a year after the jurisdiction hearing, the mother filed a section 388 petition seeking reunification services. A *Kelsey S.* father filed a section 388 petition in which he asked the juvenile court to take the permanency planning hearing off calendar, provide him with reunification services, issue a home of parent order and order unmonitored visits. (*Hunter W.*, *supra*, 200 Cal.App.4th at pp. 1460, 1461–1463.) Both parents appeared at a hearing regarding permanency planning and mother's section 388 petition. After a social worker testified and was cross-examined, the juvenile court continued the hearing to another date to hear the testimony of the mother, the father and a provider of reunification services named Harris. The mother and father checked in at 8:30 a.m. the morning of the continued hearing. When the juvenile court convened at 10:20 a.m., it noted that while both parents had checked in, neither was present nor responding to pages to report back to court. "Father's counsel informed the court that father went to his treatment program to obtain a signed certificate. He stated: '[Father]

7

said it would be ready at 10:00 a.m. and its 10:20. I'm assuming that's where he is. It's in L.A. And then he is coming back. So I would ask for a brief continuance. I asked for him to get the letter because Mr. Harris, the program director, I have not been able to be in contact with him and the letter that he produced was not signed or even validated.'" (*Hunter W., supra,* at p. 1460.) She continued: "And in fairness, Your Honor, there was an officer here on another case, and I thought he was going to be testifying this morning. So that's why I told him to go now so that he would be back by 1:30.'" (*Ibid.*)

The juvenile court proceeded with the hearing. After argument, it stated: "'Just so the record is clear, the request for a continuance was . . . denied. . . . This was in progress and set at 8:30 this morning. We've been ongoing for about a half hour and mother still has not appeared.' The [juvenile] court recounted the matter's procedural history, noting that the permanency hearing was set 10 months earlier and was continued several times. The [juvenile] court found that it is not 'in this child's best interest to put this matter over any further. The reality is we've gone ten months around this, and it seems to me frankly that at this point the parents are playing the system and trying to delay it. This is a young child so deserving of permanence the [juvenile] court cannot find under [section] 352 that it's in his best interest to continue this matter any further while the parents are running around.' The [juvenile] court noted it had 27 matters on calendar that day, five of them being trials, and concluded that there was no good cause for the continuance." (*Hunter W.*, *supra*, 200 Cal.App.4th at p. 1460.) The juvenile court denied mother's section 388 petition and terminated parental rights. (*Id.* at pp. 1460–1461.)

The *Hunter W.* court reversed, holding that it was an abuse of discretion for the juvenile court "not to hold the case to the afternoon calendar." (*Hunter W.*, *supra*, 200 Cal.App.4th at p. 1463.) The court noted that the interest of a parent in the companionship, care, custody and management of his or her children is a compelling one, and a state must provide a parent with adequate notice and an opportunity to be heard before depriving him or her of this interest. (*Ibid.*) In addition, the court elucidated that a parent who makes a prima facie showing of changed circumstances under section 388 has a due process right to a full and fair hearing on the merits. It concluded that the parents

8

were denied the opportunity to present their positions in a meaningful manner because they did not testify. (*Hunter W., supra,* at p. 1464.)

According to *Hunter W.*, section 352 was not applicable because the juvenile court was not required to continue the hearing beyond the time within which it was required to be held.[6] Therefore, the juvenile court's "reliance on section 352 in denying counsel's requests was inappropriate." (*Hunter W., supra*, 200 Cal.App.4th at p. 1464.) Moreover, the juvenile court "gave no explanation as to why the matter had to proceed at that particular time, besides referencing its calendar. In particular, [it] did not indicate why it could not proceed on other matters on its calendar awaiting hearing that day. Nothing suggest[ed] that other proceedings would have been disrupted by a short hold. . . . Nor [did] the record support the [juvenile] court's assertion that the parents were simply 'playing the system' and trying to delay the proceeding." (*Id.* at pp. 1464–1465.) Rather, the record demonstrated that the parents were present at the prior hearing date and would have testified had there been time. (*Id.* at p. 1465.)

Though this case arises in the context of a parentage hearing, we conclude that *Hunter W.* provides guidance. Given the substantial nature of the rights at stake for father, we conclude that the juvenile court abused its discretion when it denied counsel's request for a brief continuance so counsel could locate father, who had reportedly checked in. The juvenile court's ruling denied father a full and fair opportunity to litigate parentage, an issue that the juvenile court had a duty to resolve. Moreover, father was not able to fully present his case for being a *Kelsey S.* father, an issue that had constitutional dimension. There is no indication that father was playing games with the

---

[6] In pertinent part, section 352, subdivision (a) provides: "Upon request of counsel for the parent . . . , the court may continue any hearing . . . beyond the time limit within which the hearing is otherwise required to be held, provided that no continuance shall be granted that is contrary to the interest of the minor. In considering the minor's interests, the court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements. [¶] Continuances shall be granted only upon a showing of good cause and only for that period of time shown to be necessary by the evidence presented at the hearing on the motion for the continuance."

court.  Indeed, he had previously attempted to appear by telephone, but the connection was too poor.  Before denying a brief continuance in this context, the juvenile court had to provide good reason.  The juvenile court, however, provided no explanation for why it could not afford counsel a brief period of time to locate father so that he could testify on his own behalf.  The record reveals no basis to conclude that a brief continuance would have adversely affected the minor, or that it would have caused some kind of unavoidable havoc with the juvenile court's calendar.  And insofar as the juvenile court relied on section 352 when denying a brief continuance, we conclude that it was not applicable because the hearing did not have to be continued beyond the time limit within which it was required to be held.

## DISPOSITION

The order is reversed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, Acting P. J.
              ASHMANN-GERST


We concur:


_____, J.
        CHAVEZ


_____, J.
        HOFFSTADT