Filed 7/18/16  Foster v. Madison Harbor, ALC CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| MATTHEW FOSTER,<br><br>   Plaintiff and Respondent,<br><br>      v.<br><br>MADISON HARBOR, ALC, et al.,<br><br>   Defendants and Appellants. | G051417<br><br>(Super. Ct. No. 30-2014-00707156)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Peter J. Wilson, Judge.  Affirmed.  Request for judicial notice.  Granted.  Respondent's motion to dismiss appeal.  Denied.  Respondent's request for sanctions.  Granted.  Appellants' request for sanctions.  Denied.

Madison Harbor and Jenos Firouznam-Heidari for Defendants and Appellants.

Mesisca, Riley & Kreitenberg, Dennis P. Riley and Rena E. Kreitenberg for Plaintiff and Respondent.

*          *          *

INTRODUCTION

Matthew Foster sued his former attorneys, Madison Harbor, ALC, Robert Sabahat, and Ali Parvaneh (collectively, Madison), for legal malpractice. Madison filed a motion to compel arbitration, which the trial court denied. We affirm the denial of the motion to compel arbitration.

First, Madison failed to meet its initial burden to offer evidence establishing the existence of a valid arbitration agreement covering the controversy at issue in the malpractice action. Second, substantial evidence supported the trial court's finding that Madison waived its right to arbitrate by delay and participation in the litigation process.

Madison's appeal from the trial court's order denying the motion to compel arbitration was objectively and subjectively without merit, and we grant Foster's request for sanctions. The trial court shall determine the amount of sanctions to be awarded, and whether those sanctions should be awarded against Madison, its counsel, or both.

STATEMENT OF FACTS AND
PROCEDURAL HISTORY

Foster was injured on the job in April 2006, while installing an elevator. He hired Madison to represent him in an action against the general contractor—Hathaway Dinwiddie Construction Company (Hathaway)— and two subcontractors—The Raymond Group (Raymond) and Western Air Limbach LP (Western Air) (the personal injury action). Hathaway tendered a request for defense and indemnification to Raymond and Western Air; Raymond's insurer accepted the tender, but Western Air rejected it. Hathaway filed cross-claims against Raymond and Western Air, and Raymond filed cross-claims against Hathaway and Western Air.

Shortly before trial, on Madison's recommendation, Foster accepted a settlement with Hathaway and Raymond. The settlement included an assignment of

rights to Foster from Hathaway and Raymond against Western Air. Foster then accepted an offer to settle, under Code of Civil Procedure section 998, in the amount of $5,001 from Western Air; that settlement was for Foster's direct claims against Western Air.

In November 2008, Madison, on behalf of Foster, filed a complaint against Western Air for breach of contract and indemnity (the indemnity action), raising the claims Hathaway and Raymond had assigned to him as part of their settlement of the personal injury action. The indemnity action did not assert a cause of action for subrogation or contribution, although it sought from Western Air a reimbursement of the money paid in settlement to Foster by Hathaway and by Raymond's insurer. In connection with the indemnity action, Foster and Madison executed a written fee agreement on July 3, 2008 (the 2008 legal services agreement), which did not contain an arbitration clause. The 2008 legal services agreement was for "indemnity claims against Western Air Limbach, LP" (boldface & some capitalization omitted), and specifically excluded work performed in connection with any appeal following the judgment. After a bench trial, the court entered judgment in Foster's favor.

Western Air appealed from the judgment. Madison and Foster executed a new written fee agreement limited to handling the appeal (the 2011 legal services agreement). The 2011 legal services agreement expressly stated it would "govern all future services" and contained an arbitration provision.

The Court of Appeal, Second Appellate District, reversed the judgment in Foster's favor, ruling, in part, that Foster's only claim against Western Air was for subrogation—a claim that had not been raised by Foster at trial. After the remittitur was issued, the trial court entered judgment in favor of Western Air, and ordered Foster to pay more than $100,000 in attorney fees and costs.

Foster then sued Madison in the Superior Court of Los Angeles County for legal malpractice (the malpractice action). The malpractice action alleged that Madison's legal malpractice in the personal injury action and the indemnity action caused damage to

3

Foster. The malpractice action was transferred to the Orange County Superior Court. The parties engaged in discovery, filed case management statements, and participated in a trial setting conference, at which dates for a mandatory settlement conference and a trial were set.[1]

In December 2014, Madison filed a motion to compel arbitration, contending the 2011 legal services agreement applied to the malpractice action. The trial court denied the motion on two grounds: (1) "[t]he arbitration provision relied upon by moving pa[rty] does not encompass the claims in this action" (boldface omitted); and (2) "defendants have waived their right to compel arbitration in this case based on delay and resulting prejudice."

DISCUSSION

I.

*RELEVANT STATUTORY AUTHORITY AND STANDARDS OF REVIEW*

"On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it

---

[1] Foster filed a request for judicial notice of the notice of the trial and mandatory settlement conference dates, filed in the Orange County Superior Court in *Foster v. Madison Harbor*, case No. 30-2014-00707156, on July 11, 2014. We grant this unopposed request. The notice of trial date is a record of a court of this state, and, therefore, a proper matter for judicial notice. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).) While this document was not specifically offered in opposition to the motion to compel arbitration, Madison's participation at the trial setting conference was discussed in the opposition and in counsel's declaration, as support for the argument that Madison had waived its right to arbitrate. Further, the trial court was well aware of the settlement conference and trial dates when it ruled on the arbitration request; those dates required ex parte rescheduling of the hearing on the motion to compel arbitration. Under these circumstances, it is appropriate to take judicial notice of the notice of the trial and mandatory settlement conference dates.

4

determines that:  [¶] . . . The right to compel arbitration has been waived by the petitioner."  (Code Civ. Proc., § 1281.2, subd. (a).)  In this case, the trial court determined there was no agreement to arbitrate the malpractice action, and Madison waived its right to arbitrate in any event.

When there is no conflicting extrinsic evidence, the issue whether the particular dispute was covered by an arbitration agreement is reviewed de novo.  (*In re Tobacco Cases I* (2004) 124 Cal.App.4th 1095, 1105.)  Whether a party waived its right to arbitrate is reviewed under the substantial evidence test.  (*Burton v. Cruise* (2010) 190 Cal.App.4th 939, 945-946.)

II.

*NO VALID ARBITRATION AGREEMENT*

The trial court correctly found that the controversy at issue was not covered by an arbitration agreement.  The arbitration clause, on which Madison relied, appears in the 2011 legal services agreement, which by its terms applied only to Western Air's appeal from the judgment in favor of Foster in the indemnity action.  The 2011 legal services agreement stated, in relevant part:  "Client is hiring Firm as Client's attorneys to represent Client in the following matter referenced below.  Firm will provide those legal services reasonably required to represent Client.  Firm will take reasonable steps to keep Client informed of progress and to respond to Client inquiries.  Unless Client and Firm enter into a different agreement in writing, *this Agreement will govern all future services* Firm may perform for Client.  [¶] Services limited to:  Representation Of Appeal By Western Air Limbach, Lp In Re:  *Matthew Foster Vs. Western Air Limbach, LP*, Lasc Case No. BC 402670; Court Of Appeal Case No. B230038."  (First italics added, underscoring omitted.)[2]

_____

[2]  The arbitration clause in the 2011 legal services agreement provides:  "Binding Arbitration of Disputes.  By initialing this arbitration provision below, the

5

As the party seeking arbitration, Madison had the initial burden of proving the existence of a valid arbitration agreement covering the dispute at issue in the malpractice action. (*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 705.) Madison argues that once it proffered the 2011 legal services agreement, which contains an arbitration provision, in support of the motion to compel arbitration, the burden shifted immediately to Foster. Madison is incorrect. "To satisfy the moving party's initial burden, the petition or motion must be 'accompanied by prima facie evidence of a written agreement to arbitrate the controversy' in question." (*Ibid.*)

The controversy at issue in the malpractice action relates to Madison's conduct in connection with the litigation and settlement of the personal injury action and with the litigation and trial of the indemnity action, not in connection with the appeal from the judgment obtained in the indemnity action. Hence, Madison never fulfilled its initial burden to provide prima facie evidence of an arbitration provision that applied to

Parties agree that any and all claims or disputes, of any type, nature, or description whatsoever, arising from or relating to this Agreement or the professional services rendered by Firm, will be resolved by arbitration, pursuant to the rules of the American Arbitration Association ('AAA'), except as those rules may conflict with any part or provision of this Paragraph 20, in which case the terms of this Paragraph 20 control. The Parties agree that the place of arbitration will be the AAA office in or closest to Irvine, California, unless, otherwise agreed by the Parties. The arbitrability of any dispute will be determined by California law and this Agreement will be construed, to the maximum extent allowable under California law, in favor of arbitration. [¶] In agreeing to this arbitration provision, each client specifically understands and agrees that by entering this agreement each client is foregoing the right to trial in a court or by a jury for any dispute arising from or relating to this agreement or to any aspect of the professional relationship or services rendered by Firm to clients, including without limitation, the following: [¶] A. Any dispute over what constitutes a reasonable contingent fee in the event Firm is discharged, disqualified, or for any other reason does not continue representing Client through judgment in the action; [¶] B. Any dispute regarding the professional services rendered by Firm, including any claim of professional errors, omissions, negligence, or malpractice; [¶] C. Any and every other claim or dispute whatsoever, whether based in contract, in tort, or on the alleged breach of any duty imposed by any statute, rule, or regulation." (Boldface & some capitalization omitted.)

the controversy in question, namely, whether Madison negligently performed services in connection with the personal injury action and its settlement, and the indemnity action and its trial. As the trial court found, "[t]he arbitration provision relied upon by moving pa[rty] does not encompass the claims in this action." (Boldface omitted.)

The 2011 legal services agreement applies, by its own terms, only to the provision of legal services by Madison to Foster in connection with Western Air's appeal from the judgment in Foster's favor. Nothing in the agreement supports an extension of its arbitration provision to services that were provided before it was executed. Indeed, the 2011 legal services agreement specifies that, unless otherwise agreed to in writing, it "will govern all future services" provided by Madison to Foster. This conclusion is supported by the 2008 legal services agreement between Madison and Foster, which applied to the indemnity action against Western Air that Madison would be pursuing on Foster's behalf, and which specifically excluded any appellate representation, thus necessitating the 2011 legal services agreement when the case proceeded to appeal.

The 2008 legal services agreement does not contain an arbitration provision. No written agreement evidencing an agreement to arbitrate the claims arising from the personal injury action or the indemnity action appears in the appellate record. The malpractice action only claims legal malpractice for work performed (or that was not performed) in the trial court in the personal injury action or the indemnity action.[3] Neither party offered any extrinsic evidence in support of his or its claims regarding the meaning and application of the 2011 legal services agreement. The only reasonable conclusion to be drawn from this evidence is that the written arbitration provision in the

_____

[3] We note that Madison did not designate the complaint or the answer in the malpractice action for the record on appeal, although these are the documents from which the scope of the claims in the malpractice action can be drawn. Foster, however, designated these documents, so they are properly before this court on appeal.

7

2011 legal services agreement between Madison and Foster does not apply to the claims against Madison arising out of its work before the appeal of the indemnity action.

III.

*MADISON WAIVED ANY RIGHT TO ARBITRATE.*

Even if Madison had established the existence of a valid arbitration provision applying to the malpractice action, the trial court correctly concluded that Madison had waived its right to arbitrate. "'In determining waiver, a court can consider "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party."' [Citation.]" (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196.)

Substantial evidence supported the trial court's determination that Madison waived its right to arbitrate. Madison's filing of an answer to the complaint and participation in discovery were inconsistent with an intent to arbitrate. Madison served discovery on Foster in the malpractice action and responded to Foster's discovery requests. The parties were well into their preparation for trial of the malpractice action when arbitration was requested; indeed, Madison was required to file an ex parte application for an order shortening time on its motion to compel arbitration because the regular hearing date would have been less than two weeks before the scheduled trial date.

8

Madison argues that much of its delay in requesting arbitration was due to Foster initially filing his complaint in the wrong venue, and then serving discovery on Madison. The venue of the malpractice action and Foster's service of proper discovery do not justify Madison's failure to bring before the trial court the 2011 legal services agreement, which, it contends, contains an arbitration provision. The 2011 legal services agreement was unquestionably in Madison's possession, and Madison contends that agreement applies to the malpractice action. Madison's contention that it was not aware of the arbitration agreement in its files, until shortly before it first demanded that Foster agree to arbitration, does not assist it.

Madison filed its motion to compel arbitration on December 8, 2014; the notice of motion provided for a hearing date of February 26, 2015, and a trial date had already been set for March 9, 2015. Foster's counsel's declaration in opposition to Madison's ex parte application to shorten time on its motion to compel arbitration reflects that the parties agreed to conduct certain discovery in January 2015. Madison's ex parte application to shorten time was not filed until January 5, 2015—four full weeks after the motion itself was filed. Then, immediately after the trial court denied the motion to compel, Madison filed a notice of appeal, staying all further proceedings in the trial court. The prejudice to Foster is manifest, and includes the loss of a trial date in early 2015.

IV.

*FOSTER'S MOTION TO DISMISS AND REQUEST FOR SANCTIONS,*
*AND MADISON'S REQUEST FOR SANCTIONS*

Foster filed a motion to dismiss Madison's appeal on the grounds the appeal was lacking in merit, and was brought in bad faith and solely for the purpose of delay. The lack of merit, however, cannot be determined on the face of the order, making dismissal of the appeal inappropriate.

9

The frivolousness of the appeal is, however, properly before us in connection with the requests for sanctions. The California Supreme Court has explained: "The California cases discussing frivolous appeals provide a starting point for the development of a definition of frivolous. Those cases apply standards that fall into two general categories: subjective and objective. [Citation.] The subjective standard looks to the motives of the appellant and his or her counsel. . . . [¶] The objective standard looks at the merits of the appeal from a reasonable person's perspective. 'The problem involved in determining whether the appeal is or is not frivolous is not whether [the attorney] acted in the honest belief he had grounds for appeal, but whether any reasonable person would agree that the point is totally and completely devoid of merit, and, therefore, frivolous.' [Citations.] [¶] The two standards are often used together, with one providing evidence of the other. Thus, the total lack of merit of an appeal is viewed as evidence that appellant must have intended it only for delay. [Citations.] [¶] Both strands of this definition are relevant to the determination that an appeal is frivolous. An appeal taken for an improper motive represents a time-consuming and disruptive use of the judicial process. Similarly, an appeal taken despite the fact that no reasonable attorney could have thought it meritorious ties up judicial resources and diverts attention from the already burdensome volume of work at the appellate courts. Thus, an appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—*or when it indisputably has no merit*—when any reasonable attorney would agree that the appeal is totally and completely without merit. [Citation.] [¶] However, any definition must be read so as to avoid a serious chilling effect on the assertion of litigants' rights on appeal. Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal. An appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions. Counsel should not be deterred from

10

filing such appeals out of a fear of reprisals." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 649-650, fn. omitted, first italics added.)

This is the rare case in which we can determine categorically that the appeal was objectively without merit. No reasonable attorney would argue that an arbitration provision in a legal services agreement specifically addressing one portion of a law firm's representation of its client applied to earlier legal services which had already been performed and were covered (at least in part) by a separate written agreement that had no arbitration clause. Indeed, the 2011 legal services agreement specifically states it governs "future services."

Although we do not need to decide if the appeal is subjectively without merit, we observe that Madison's filing of the motion to compel arbitration on the eve of trial, after participating in litigation for many months, and then filing a notice of appeal immediately after the denial of its motion to compel arbitration, demonstrate an attempt to use the court's processes, including this appeal, for the purpose of delay. Madison's claim that the 2011 legal services agreement, which it drafted and which was in its possession, was not discovered for almost a year after the malpractice action was filed—even if credible—does not assist it because Madison is charged with knowledge of that agreement.

In its opposition to Foster's request for sanctions, in addition to challenging Foster's contentions about its alleged bad faith, Madison argues Foster's claims lack merit, and the issues presented are better suited to arbitration than trial. These arguments are not appropriate at this stage of the proceedings. Further, Madison contends that, rather than being dilatory, it has a great interest in moving Foster's claims to resolution to prove them wrong. However, Madison cannot avoid the simple fact that by filing the motion to compel arbitration, the March 2015 trial date was lost, and by filing the present appeal, the reset April 2015 trial date was also lost.

11

As set forth in *In re Marriage of Flaherty*, we have carefully considered the possible chilling effect of awarding sanctions. We have also considered Madison's counsel's oral argument on appeal on this issue. After careful deliberation, we are convinced that the appeal is objectively frivolous, not merely without merit.

Appellate counsel for Madison averred that the decision to appeal the trial court's order was made by her personally, based on her research and colleagues' advice, and requested that if this court was considering the imposition of sanctions, sanctions be imposed on her personally, not on her clients. Normally, we would use this information to decide whether to order that sanctions be awarded against appellate counsel alone, or against the client as well. (*Johnson v. Lewis* (2004) 120 Cal.App.4th 443, 457.) The unusual situation of having a law firm and its attorneys represented on appeal by another attorney from that firm convinces us that the better course of action is to remand the matter, and allow the trial court to determine both the amount of sanctions, and the entities or individuals against whom they should be awarded.

Under section 6086.7, subdivision (a)(3) of the Business and Professions Code and canon 3D(2) of the California Code of Judicial Ethics, we are bound to report an attorney to the State Bar for sanctions of the type awarded here if the sanctions are awarded against an attorney. However, as discussed *ante*, we leave the identity of the person or entity to be sanctioned to the trial court. Accordingly, the trial court should convey a report, if applicable.

Madison's request for sanctions is based on the contention that Foster's request for sanctions was frivolous. By granting Foster's request for sanctions, we have established its lack of frivolousness.

DISPOSITION

The order is affirmed. Respondent to recover costs on appeal. Respondent to recover sanctions on appeal, in an amount to be determined by the trial court, from appellate counsel, or the parties, or both, as determined by the trial court.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.